**UNITED STATES of America ex rel.
James A. STUKES, Appellant,**

v.

**John P. SHOVLIN, Superintendent.**

**No. 71–1691.**

United States Court of Appeals,
Third Circuit.

Argued May 1, 1972.

Decided July 31, 1972.

**1212**

James E. Beasley, Beasley, Albert Hewson & Casey, Philadelphia, Pa., for appellant.

James D. Crawford, Deputy Dist. Atty., Carolyn E. Temin, Asst. Dist. Atty., Milton M. Stein, Asst. Dist. Atty., Chief, Appeals Division, Richard A. Sprague, First Asst. Dist. Atty., Arlen Specter, District Atty., Philadelphia, Pa., for appellee.

Before VAN DUSEN, GIBBONS and JAMES ROSEN, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

On this appeal, defendant, James A. Stukes, challenges the district court denial of his request for habeas corpus relief. United States ex rel. Stukes v. Shovlin, 329 F.Supp. 911 (E.D.Pa.1971). In the district court defendant attacked his state court conviction of first degree murder which arose out of the death of Lena Alexandroff. Mrs. Alexandroff's death was the consequence of a beating inflicted during the course of a robbery in which decedent, her 44-year old daughter, Natalie Tuchar, and her 14-year old granddaughter, Paula Tuchar, were beaten and raped.[1] Defendant was tried separately from two co-defendants, who were also charged with first degree murder.

■ After a careful review of the lengthy record and a thorough reading of the extensive briefs filed by counsel, we find the grounds of alleged error presented on this appeal to be without merit and affirm the district court's opinion and order of June 7, 1971. We find that the following four alleged errors were adequately dealt with in the opinions of the district court and the Pennsylvania Supreme Court, and thus require no further discussion by this court,[2] see United States ex rel. Stukes

---

1. The factual background of the crime is set out in Commonwealth v. Stukes, 435 Pa. 525, 257 A.2d 828 (1969). See also United States ex rel. Dessus v. Commonwealth, 452 F.2d 557 (3d Cir. 1971); Commonwealth v. Dessus, 423 Pa. 177, 224 A.2d 188 (1966).

2. At oral argument before this court counsel for defendant asserted two additional grounds which were not raised before the district court or briefed in this court:

    (1) Defendant's motion for a change of venue due to unfair publicity was not acted upon until the voir dire was being conducted. See Sheppard v. Maxwell, 384 U.S. 333, 362, 86 S.Ct. 1507, 16 L. Ed.2d 600 (1966); United States v. Farries, 459 F.2d 1057 (3d Cir. 1972); cf. footnote 7 below.

    (2) Defendant's request for a pathologist was refused.

    We do not consider these grounds since they have not been properly raised before this court. See United States ex rel. Bishop v. Rundle, 437 F.2d 204, 206 (3d Cir. 1971).

v. Shovlin, 329 F.Supp. 911 (E.D.Pa. 1971); Commonwealth v. Stukes, 435 Pa. 525, 257 A.2d 828 (1969):

1. The refusal of the trial judge to allow additional examination of the qualifications of medical witnesses who testified as to defendant's competency to stand trial. See 329 F.Supp. at 914; 257 A.2d at 831.

2. Contention that it was reversible error to require defendant to stand trial when he was drugged before and during his trial. See 329 F. Supp. at 914–915; 257 A.2d at 832.

3. The Commonwealth failed to meet its burden of proof in light of the changed testimony of crucial witnesses. See 329 F.Supp. at 919; 257 A.2d at 834; and note 12 below.

4. There was a purposeful disregard of the Pennsylvania Rules of Criminal Procedure requiring notice to counsel of court orders. See 257 A.2d at 831, 834–835.

In addition, we reject these contentions of defendant for the following reasons:

## I. *Right To Counsel*

■ Defendant contends that he was denied the right to effective assistance of counsel at a critical stage in the proceedings against him, namely, at a pretrial ex parte psychiatric examination ordered by the state court.[3] We agree with the well-reasoned analysis of this issue by the district court, which concluded that the psychiatric examination was not a "critical stage" of the proceedings, in the constitutional sense, requiring the presence of counsel.[4] 329 F.Supp. at 913.

A related issue raised by defendant on this appeal is that the failure to notify defense counsel of the psychiatric examination, and the mental condition which precipitated it, denied defendant the effective assistance of counsel. Defendant contends that the absence of counsel at the examination and the failure to give notice adversely affected his ability to proceed with his lack of competency claim and thus denied him the effective assistance of counsel and a fair trial.[5]

■ An examination of the record indicates that the psychiatric examination in question was conducted upon the order of the Court of Quarters Sessions, Psychiatric Division, to determine defendant's competency to stand trial. The question of defendant's competency

---

3. The factual background of the psychiatric examination is set out at 435 Pa. 539–541, 257 A.2d 830.

4. This district court conclusion was based on the reasoning that counsel's presence was not necessary to protect defendant's rights, particularly since such counsel could have done nothing except test the accuracy of medical conclusions drawn from the doctor's observation. See United States v. Baird, 414 F.2d 700, 711 (2d Cir. 1969). The case of Schantz v. Eyman, 418 F.2d 11, 13 (9th Cir. 1969), holding that counsel could serve a valuable function at such proceedings is distinguishable. In that case the court found that the psychiatric examination had been ordered by the prosecution (not by the court at the request of the correctional officials, as in this case) as a means of circumventing defendant's counsel and that this improper procedure could have been prevented by counsel's presence. See, also, note 6 below. Also, we agree with the district court's finding that no Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), custodial interrogation problem was raised by this examination. See 329 F.Supp. at 914.

5. This argument does not affect our finding that the psychiatric examination was not a critical stage of the proceeding. In United States ex rel. Reed v. Anderson, 461 F.2d 739 (3d Cir. 1972) (en banc), this court defined "critical stage" as "those links in the prosecutorial chain of events in which the potential for incrimination inheres or at which the opportunity for effective defense must be seized or foregone," 461 F.2d 742. The psychiatric examination was not a "link in the prosecutorial chain of events," since it was conducted at the request of the correctional officials without the knowledge or consent of the prosecution. See Commonwealth v. Stukes, 257 A.2d 828, 831 (1969). In addition, the opportunity for effectively raising the competency issue was not lost by counsel's being absent from the examination.

was first raised by the prison psychiatrist, who treated him for a "severe anxiety reaction" and notified the Psychiatric Division of the Department of Probation of the condition, recommending further examination. As a result, the court ordered an examination, the results of which indicated that defendant was competent to stand trial. The examination was competely ex parte without notice to or knowledge of it by either defense counsel or the prosecution. Under the circumstances shown in this record, we find that the failure to notify counsel of the examination did not deny defendant a fair trial or the effective assistance of trial counsel.[6]

Defense counsel was notified of the "severe anxiety reaction" of defendant during the voir dire and he chose not to petition the court for a determination that his client was not competent to stand trial. In response to a question from the court, such counsel stated that he could not determine if defendant was competent (V.D. 1430). He did request that a neuro-psychiatrist be provided by the court but the court acted within its discretion in refusing this request. Cf. United States ex rel. Dessus v. Commonwealth, 452 F.2d 557, 563 (3d Cir. 1971). In light of the nonadversary nature of the examination and defense counsel's failure to question competency after he was made privy to the examination results, we can find no constitutional error in the procedures followed by the trial court.

## II. Right To Speedy Trial

Defendant alleges that he was denied his Sixth Amendment right to a speedy trial. The facts as set out in Commonwealth v. Stukes, supra (257 A.2d at 832), indicate that the total delay from defendant's arrest on April 3, 1966, to the date on which his trial began, June 6, 1967, was approximately 14 months.

■ In Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (June 22, 1972), the Supreme Court addressed the difficult questions presented by speedy trial claims. The Court rejected any per se rule for determining such questions and relied on an ad hoc balancing test which took into consideration the following four factors: length of delay, the defendant's assertion of his right, the reason for delay, and the prejudice to defendant. Applying this test to the facts of this case, we find that defendant was not denied his Sixth Amendment right to a speedy trial.

As the Court noted, the length of the delay is the least conclusive of the factors and, where substantial, acts as a triggering mechanism which necessitates an analysis of the other factors. A delay of 14 months is thus not dispositive in and of itself, but is sufficiently lengthy to warrant an inquiry into the other facts.

■ Defendant has continually and vigorously asserted his right to a speedy trial, demanding a prompt trial as early as May 4, 1966. Such an assertion is entitled to strong evidentiary weight in determining whether defendant has been deprived of his right to a speedy trial.

■ Defendant claims prejudice resulting from the delay, since he experienced a severe anxiety reaction to his confinement, which was stated in the re-

6. In those situations where the examination has been ordered by the prosecution, a different result may be warranted. Compare Schantz v. Eyman, 418 F.2d 11 (9th Cir. 1969), with United States ex rel. Wax v. Pate, 409 F.2d 498 (7th Cir. 1969). In the federal courts, competency examinations similar to the one conducted in this case can be carried out pursuant to 18 U.S.C. § 4244 (1970). Such federal proceedings are considered to be "non-adversary in character, unless and until the psychiatric report reflects a mental condition which calls for a hearing and examination by the Court of appellant's competence." Stone v. United States, 358 F.2d 503, 506 (9th Cir. 1966), and hearings and notification are not required where the examination discloses that the defendant is competent. Caster v. United States, 319 F.2d 850, 852 (5th Cir.), cert. denied, 376 U.S. 953, 84 S.Ct. 972, 11 L.Ed.2d 973 (1963).

port of the prison psychiatrist. The creation of such anxiety in a defendant is one of the evils against which the Sixth Amendment is designed to protect. United States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).[7]

The final factor to be considered is the reason for the delay. We concur in the fact findings of the district court as to the reason for the delay set out at 329 F.Supp. 917–918 and agree with the court's conclusion that:

"Considering the nature of relator's case as being one of three separate trials for the same crime, the complexity of the case, the various motions placed on the record by relator for investigative work and continuances, the need for psychiatric evaluations, and hearings, and the crowded state of Philadelphia Common Pleas criminal dockets, it appears that the case against relator was delayed for good and sufficient reasons. It appears to this Court that the trial proceeded to its logical conclusion at a deliberate pace not inconsistent with the orderly expedition of a speedy trial."

■ While we are not insensitive to the anxiety suffered by the defendant and the strong assertion of his rights, we feel that the 14-month delay in this case was justified in light of the reasons for that delay.

III. *Sufficiency of Evidence—Felony Murder*

■ Defendant alleges that there was insufficient evidence to support his conviction of first degree murder, and challenges the applicability of the felony-murder doctrine on various grounds. The felony-murder rule is set out in 18 P.S. § 4701, which provides:

"All murder . . . which shall be committed in the perpetration of, or attempting to perpetrate, any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree." [8]

In Commonwealth v. Batley, 436 Pa. 377, 260 A.2d 793 (1970), the court said at page 800:

". . . 'in order to convict for felony-murder, *the killing must have been done by the defendant or by an accomplice or confederate or by one acting in furtherance of the felonious undertaking* [citing authorities]' and that 'the thing which is imputed to a felon for a killing incidental to his felony is *malice* and *not the act of killing*.' That the killing need not be by the defendant in a felony-murder case is well settled. If the killing is by one acting in concert or in furtherance of a common design with the defendant, the latter is equally guilty."

The Commonwealth proceeded under the theory that defendant was an accomplice or "one acting in furtherance of the felonious undertaking" during which various felonies enumerated in 18 P.S. § 4701, as quoted above, were committed, as well as the assault on Mrs. Alexandroff which resulted in her death. Defendant argues on this appeal that his conviction under this theory was bottomed on conspiracy, a crime for which

---

7. We reject defendant's additional allegations of prejudice. 329 F.Supp. at 918. As to the contention that delaying relator's trial until after the trials of the two co-defendants in August 1966 and March 1967 subjected him to inflammatory publicity (par. 12(d) of Petition under "Secondly" and 1175a, 1187a), the state trial judge's finding that the heat of any inflammatory publicity had subsided by the time of relator's trial in June 1967 is "fairly supported by the record." See 28 U.S.C. § 2254(d). We have made an independent examination of the record in the state courts and it

contains no evidence, as opposed to allegations, of such publicity by the news media that defendant could not receive a fair trial. See Sheppard v. Maxwell, *supra* 384 U.S. at 362–363, 86 S.Ct. 1507 (1966).

8. 18 P.S. § 4701. Defendant's allegation that the felony-murder rule is unconstitutional is clearly without merit. He has cited no theory under which the rule could be found to be unconstitutional but rather appears to rely on the application of the facts of this case. See discussion *infra*.

he was not tried, and that there was no evidence that he participated in a felony which can be related to the death of Mrs. Alexandroff. We find these contentions to be without merit.

When a killing by a felon occurs in the furtherance or as the result of any of the five felonies enumerated in 18 P.S. § 4701, not only the actual killer but one who participated by acting in concert or in furtherance of a common design is guilty of murder in the first degree under the Pennsylvania cases.[9] Proof of a common design or concerted action will often be the equivalent of conspiracy, but it is not necessary to bring a defendant to trial on a conspiracy indictment in order to prove such a common design or concerted action. *Cf.* United States v. Van Orden (3d Cir. 1972). Such proof is necessary to establish causation and to impute malice to the defendant in order to convict for first degree murder,[10] and is therefore admissible under an indictment for first degree murder.

While the evidence in this case does not establish defendant's participation in the robbing, beating, or sexual assault of Mrs. Alexandroff, it was sufficient to prove that he acted in concert with the other two participants and that the entire occurrence was carried out in furtherance of a common design.[11]

Direct evidence was introduced that defendant raped Natalie Tuchar [12] and indecently assaulted her daughter Paula.[13] In light of this activity, defendant's statements upon first encountering the Tuchars that he was a passerby who had heard screams and entered the house to help, can be discounted.[14] Mr. Williams, who first arrived on the scene of the crime, testified that he encountered defendant on the street outside of the Tuchar house while waiting for the police to arrive. Defendant indicated no knowledge of what had transpired and left when asked to phone the police. Considering this direct evidence with the circumstantial evidence of defendant's presence at a party with the other two participants in the crime earlier in the evening, the jury was entitled to find beyond a reasonable doubt that defendant acted in concert with the other two participants pursuant to a common design.

## IV. *Charge*

Defendant has alleged various prejudicial errors in the judge's charge to the jury. We have thoroughly examined the charge as a whole and defendant's objections thereto and find no error which requires habeas corpus relief.

---

9. *See* Commonwealth v. Batley, 436 Pa. 377, 260 A.2d 793 (1970); Commonwealth v. Melton, 406 Pa. 343, 178 A.2d 728 (1962).

10. See Commonwealth v. Redline, 391 Pa. 486, 137 A.2d 472 (1958); Commonwealth v. Kelley, 333 Pa. 280, 4 A.2d 805 (1938).

11. Commonwealth v. Stukes, *supra*, 257 A.2d at 830. We accept the factual findings made by the state court as to Stukes' participation. 28 U.S.C. § 2254(d).

12. We have rejected above, at page 3 (item 3) defendant's claim that the Commonwealth failed to meet its burden of proof in light of the apparent inconsistencies in the testimony of Natalie Tuchar regarding the rape by Stukes. Although it is true that she had testified on prior occasions that she did not recall being

raped by Stukes, *see* 3099a, 3100a, 2736a, 2737a, 2692a, she gave direct testimony at defendant's trial that she had been struck and forcibly raped by him. 2660–62a, 2717a, 2736a. Mrs. Tuchar was extensively cross-examined by defense counsel and repeated questions were directed to her prior inconsistent statements. 2669a–2739a. The jury was free to resolve this conflicting testimony and we will not set aside its finding of fact.

13. 2512a.

14. The evidence as to defendant's brief confrontations with Burgess and Dessus in the Tuchar home can be explained by other motivations than a desire to aid the victims and, in any event, would not absolve him of responsibility. · *See* Commonwealth v. Batley, 260 A.2d 793, 795 n. 2 (1970).

We have considered and rejected the other contentions advanced by defendant and, in accordance with the foregoing opinion, the judgment of the district court will be affirmed.