UNITED STATES of America

v.

Joel P. DREYER et al.

Appeal of Audrey Ellen GOLDSMITH.

No. 75–1835.

United States Court of Appeals,
Third Circuit.

Argued Feb. 12, 1976.

Decided March 29, 1976.

Before ALDISERT, GIBBONS and RO-
SENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

 We are asked to consider the claim
of appellant, Audrey Ellen Goldsmith, that
her sixth amendment right to a speedy trial
was violated by the Government's bringing
her to trial twenty-nine months after her
indictment.[1] The United States District
Court for the District of New Jersey denied
Goldsmith's motion to dismiss on this
ground. Thereafter, she stipulated to the
facts contained in Count I of a four-count
indictment and was tried and convicted on
that count by the district court judge sit-
ting without a jury.[2] We hold that Gold-
smith was denied a speedy trial and reverse,
directing the district court to vacate the
sentence and dismiss the indictment, as re-
quired by *Strunk v. United States*, 412 U.S.
434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

## I.

The Government's brief concedes that the
length of the delay in this case "should
trigger further inquiry." Our inquiry must
begin with the chronology of events in the
twenty-nine month period. Goldsmith
owned a camper which was shipped from
Belgium to Port Elizabeth, New Jersey,
with approximately 856 pounds of hashish
in its storage area. She met the camper at
Port Elizabeth in late August 1972, drove it
to Iowa, turned the vehicle over to a co-con-
spirator, and flew to California. Goldsmith
was arrested in California where she was
indicted a few weeks later. The indictment
charged her and the co-conspirator with

Alan Silber, East Orange, N. J., for ap-
pellant.

Jonathan L. Goldstein, U. S. Atty., New-
ark, N. J., for appellee; Brian D. Burns,
Asst. U. S. Atty., on the brief.

1. Goldsmith also urges a violation of Fed.R.
Crim.P. 48(b), which allows the dismissal of an
indictment "if there is unnecessary delay in
bringing a defendant to trial." Rule 48(b) is a
vehicle for enforcing a defendant's speedy trial
right. But it is more. It is also a restatement
of the court's inherent power to dismiss a case
simply for want of prosecution. 3 C. Wright,
*Federal Practice and Procedure* § 814, at 309
(1969). Because Goldsmith's claim is based on
prejudice during the delay, rather than on mere

want of prosecution, we treat this case on con-
stitutional grounds, encompassing the Rule
48(b) claim.

2. The judge sentenced Goldsmith to imprison-
ment for three years, with two and a half years
suspended and six months to be served in a
halfway house facility. The term was to be
followed by a special parole period of two
years.

conspiracy to possess, import, and distribute hashish.

The United States Attorney in California then communicated with his counterpart in New Jersey to inform him that Goldsmith's lack of contacts with the camper in California would make the case difficult to prove there. As a result, on November 19, 1972, a one-count indictment charging Goldsmith with importing hashish was returned in New Jersey. Venue of the California indictment was transferred to New Jersey in February 1973.

In March of that year, a superseding New Jersey indictment was returned. That indictment charged Goldsmith and three co-defendants with four counts of importation, possession with intent to distribute, and conspiracy to import and to possess hashish.

The Government and defense counsel agreed on a consent order for discovery on May 23, 1973, which the Government did not file until six weeks had passed. On August 10, 1973, defense counsel wrote to the Assistant United States Attorney for a stamped copy of the consent order and to inform him that Goldsmith "has been extremely distraught and emotionally upset as a result of the long delay and pressures in this case."

The consent order was never used because a second superseding indictment against Goldsmith and eight codefendants was returned on December 19, 1973. This indictment ultimately formed the basis for trial in March 1975. It charged the same offenses as the March 1973 indictment [3] but

included five additional co-defendants and five additional overt acts in furtherance of the conspiracy, none of which was alleged to have been committed by Goldsmith.

Consent orders for discovery were entered in April 1974, but the Government did not fully comply with the orders until the case had been listed for trial six months later.

In November 1974, defense counsel and the Assistant United States Attorney set a peremptory trial date for March 1975. A few weeks later, Goldsmith unsuccessfully sought to have the second superseding indictment dismissed as to her on the speedy trial ground. In support of her motion, Goldsmith introduced evidence of the psychological damage which she contended had been wrought by the long delay in this case.

■ Although the district court thought that the delay "is much too long," it professed skepticism toward Goldsmith's allegations of prejudice. Furthermore, it concluded that she had not demonstrated the sort of prejudice against which the speedy trial guarantee could be invoked. We believe this conclusion reflected a too restricted view of the scope of the guarantee.

II.

■ The district court properly looked to the "balancing test" of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which is the jumping-off point for any analysis of a speedy trial claim. The *Barker* Court isolated four factors which are significant in weighing the claim: (1)

---

**3.** Count I charged a conspiracy to import hashish in violation of 21 U.S.C. § 963, which punishes a conspiracy to commit any offense defined by the Controlled Substances Import and Export Act, 21 U.S.C. §§ 951–965 (1971).

Count II charged conspiracy to possess hashish with intent to distribute in violation of 21 U.S.C. § 846 (1971), which punishes a conspiracy to commit any offense under the Controlled Substances Act, 21 U.S.C. §§ 801–904 (1971).

Count III charged a violation of 21 U.S.C. § 960 (1971), which provides in pertinent part:

(a) Any person who—

(1) contrary to section 952 . . . knowingly or intentionally imports or exports a controlled substance,

* * * * * *

shall be imprisoned not more than fifteen years, or fined not more than $25,000, or both.

Count IV charged a violation of 21 U.S.C. § 841(a)(1) (1971), which provides in pertinent part:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—

(1) to . . . possess with intent to . . . distribute . . . a controlled substance;

Counts III and IV also charged a violation of 18 U.S.C. § 2 (1971) which authorized punishment of an aider or abettor as a principal.

length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. The Court emphasized that it did not intend the list to be exhaustive nor any one factor dispositive and that other relevant circumstances should also be considered.

Our analysis begins with the district court's treatment of the prejudice factor. In its oral opinion denying Goldsmith's motion to dismiss the indictment, the district court expressed its understanding of "prejudice" within the meaning of *Barker:*

[B]y prejudice, I mean the impairment of the ability of the defendant to defend this case on the merits.

\* \* \* \* \* \*

Nothing has been presented to me on which I could posit a finding [that] her ability to defend has been in any way impaired. No witness she says essential has died. No documents have been destroyed. Nothing has happened to make a trial held not less than fair to her.

■ This reading of *Barker*, which confines "prejudice" to impairment to the defense, was explicitly rejected by the United States Supreme Court in *Moore v. Arizona,* 414 U.S. 25, 26–27, 94 S.Ct. 188, 189–190, 38 L.Ed.2d 183, 185–186 (1973) (per curiam). There the Court quoted approvingly from Justice White's concurring opinion in *Barker v. Wingo, supra,* 407 U.S. at 537, 92 S.Ct. at 2195, 33 L.Ed.2d at 121:

Inordinate delay "wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.' *United*

States v. Marion, 404 U.S. 307, 320, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty." [4]

The majority in *Barker* also recognized that an accused is "disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility." *Barker v. Wingo, supra,* 407 U.S. at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.[5] A proper reading of *Barker*, therefore, must include within the meaning of "prejudice" any threat to what the Second Circuit recently has termed "an accused's significant stakes—psychological, physical and financial—in the prompt termination of a proceeding which may ultimately deprive him of life, liberty or property." *United States v. Roberts,* 515 F.2d 642, 645 (2d Cir. 1975).

The speedy trial guarantee has generally been regarded as a shield against personal prejudice to a defendant. *Strunk v. United States,* 412 U.S. 434, 439, 93 S.Ct. 2260, 2263, 37 L.Ed.2d 56, 61 (1973); *Dickey v. Florida,* 398 U.S. 30, 41–42, 90 S.Ct. 1564, 1570–71, 26 L.Ed.2d 26, 34 (1970) (Brennan, J., concurring); *Smith v. Hooey,* 393 U.S. 374, 379, 89 S.Ct. 575, 577, 21 L.Ed.2d 607, 612 (1969); *Klopfer v. North Carolina,,* 386 U.S. 213, 222, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 7 (1967); *United States v. Ewell,* 383 U.S. 116, 120, 86 S.Ct. 773, 776, 15 L.Ed.2d 627, 630 (1966). Some decisions appear to express more solicitude toward this sort of prejudice than toward impairment of a defense.

■ Indeed, erosion of a defense by passage of time may occur even when there is

---

4. Justice White would balance the inevitable personal prejudice against any "special circumstances presenting a more pressing public need with respect to the case itself" and, only if the special circumstances outweigh the personal prejudice, would he consider whether the defense at trial has been prejudiced. *Barker v. Wingo, supra,* 407 U.S. at 537–38, 92 S.Ct. at 2195, 33 L.Ed.2d at 121.

5. The Court in *Barker v. Wingo* observed, in assessing prejudice to the defendant, that the speedy trial right was designed to prevent impairment of the defense but also "to minimize anxiety and concern of the accused." *Id.* at 532, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

a delay between the commission of the offense and the criminal prosecution, whether by arrest, formal indictment, or information. Nevertheless, the speedy trial guarantee is not applied to such delay. *See Dillingham v. United States,* 423 U.S. 64, 96 S.Ct. 303, 46 L.Ed.2d 205, 44 U.S.L.W. 3327 (Dec. 1, 1975). The Court in *United States v. Marion, supra,* explained:

> Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.

404 U.S. at 320, 92 S.Ct. at 463, 30 L.Ed.2d at 478. The Court went on to emphasize the disruptions to a defendant's life which begin with his arrest and indictment in the language quoted by Justice White in *Barker, supra.*

This court, following the avenue marked out in *Marion,* paid particular attention to evidence of a "severe anxiety reaction" by prolonged confinement of a defendant awaiting trial in *United States ex rel. Stukes v. Shovlin,* 464 F.2d 1211, 1214–15 (3d Cir. 1972). The *Shovlin* decision took account of the factors listed in *Barker,* which had been handed down one month before, when it stated that "[t]he creation of such anxiety in a defendant is one of the evils against which the Sixth Amendment is designed to protect." *Id.* at 1215.

A recent decision by the United States Court of Appeals for the District of Columbia Circuit accords with *Shovlin.* In *United States v. Brown,* 172 U.S.App.D.C. 92, 520 F.2d 1106 (1975), the court declared of a defendant making a speedy trial claim:

> His prejudice of a personal character is clear. This kind of prejudice, though not the same as that caused by the death of a witness or other loss of evidence, which may include loss of the memories of witnesses, is firmly established as important.

*Id.* at 1111. *Accord, Moore v. Arizona, supra; Strunk v. United States, supra.*

Having established that the district court erred in defining prejudice to include only injuries to Goldsmith's defense, we now turn to the evidence of personal prejudice on this record and to the Government's justification for the delay.

### III.

▆ Although a certain amount of anxiety and other forms of personal prejudice to the accused is inevitable in a criminal case, we believe Goldsmith was forced to suffer an unacceptable degree of damage by reason of the inordinate delay here. For the two and a half years' hiatus, Goldsmith experienced severe mental disturbance. She consulted a psychiatrist just after her arrest and was in intensive therapy for acute anxiety and depression until July 1973. The psychiatrist's report indicates that, during this period, despite continued treatment she was unable to work.

A letter from her psychiatrist, entered into evidence, describes her "feelings of helplessness, anxiety, depression and isolation" which "continued to worsen despite continuing intensive therapy, and trials of antidepressant medication." The anxiety and depression culminated in a suicide attempt in July 1973 for which Goldsmith was hospitalized. Thereafter, her condition improved because she was able to obliterate the impending criminal proceedings from her consciousness. When reality intruded and she received word that her case was scheduled for trial, she suffered a relapse. The psychiatrist concluded that "the events of the last two years have created such pathological stress in this young woman over such a long time that she now has a deeply disturbed personality pattern."

The Government seeks to overcome the showing of prejudice by alleging that, after the first indictments were returned, it uncovered new evidence which it was obliged to investigate and which, in turn, necessitated more prolonged trial preparation.

The new evidence apparently related to an importation of hashish identical to the one in which Goldsmith was involved but before she became the owner of the camper. Investigation of that prior activity produc-

ed three more co-defendants and five more alleged overt acts. Since the co-defendants had not committed any offenses different from those already alleged in the March 1973 indictment, their addition as co-conspirators did not alter the case against Goldsmith. The addition of overt acts was even more superfluous because no overt act is required under the conspiracy statutes invoked here.[6] We find nothing to indicate that the Government reasonably could have believed that the new evidence implicated Goldsmith so as to justify prolonging her trial date.[7]

The district court also found that a portion of the delay could be attributed to the Government's failure to comply promptly with discovery orders and to notify Goldsmith of the superseding indictments. Also, the court stated that when the case was listed for trial "nobody moved it." We weigh this lack of responsiveness heavily against the Government, especially since it had notice of Goldsmith's precarious emotional and mental health.

We have examined the totality of circumstances surrounding the twenty-nine month delay. We conclude that the gravity of the personal prejudice here amounts to a violation of Goldsmith's sixth amendment speedy trial guarantee.

The facts pertaining to the delay are documentary, and no question of credibility is involved in this aspect of the case. This court is thus in as good a position to determine the question of prejudice as is the district court. *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904, 907 (3d Cir. 1975), *cert. denied*, 423 U.S. 863, 96 S.Ct. 122, 46 L.Ed.2d 92 (1976.) Therefore, we see no need to remand for findings by the district court.

The judgment of the district court will be reversed and the district court is directed to vacate the sentence and dismiss the indictment.

---

**6.** Courts have interpreted 21 U.S.C. § 846 (1971), under which Goldsmith was charged, to have dispensed with the requirement that an overt act be alleged in the indictment or proved at trial. *United States v. De Jesus*, 520 F.2d 298, 301 (1st Cir. 1975), *cert. denied*, 423 U.S. 865, 96 S.Ct. 126, 46 L.Ed.2d 94 (1976); *United States v. Beasley*, 519 F.2d 233, 247 (5th Cir. 1975). As the language of the other conspiracy statute here, 21 U.S.C. § 963 (1971), is identical to that of section 846, we read it also to have eliminated the need to allege or prove an overt act.

**7.** The Government contends that it is compelled by our decision in *United States v. Young*, 503 F.2d 1072 (3d Cir. 1974), not to try a conspiracy piecemeal. *Young* requires that a single defendant not be brought to trial several times on different aspects of a sole conspiracy. We are not convinced that an early trial of Goldsmith would have been followed by other trials on different facets of her involvement in this conspiracy. The extent of her participation was known much before she was tried, and the risk of running afoul of *Young* was not present in this case.