**UNITED STATES of America,**

v.

**Eleazar MORIN, Jr.**

**No. 3:01–00168.**

United States District Court,
M.D. Tennessee,
Nashville Division.

June 23, 2003.

Joseph A. Turner, D.H. Wannamaker, Austin, TX, for Eleazar Morin, Jr.

Sunny A. M. Koshy, Nashville, TN, for U.S.

## MEMORANDUM

ECHOLS, Chief Judge.

Pending before the Court is Defendant's Motion to Dismiss (Docket Entry No. 42), to which the Government has responded in opposition.

## I. FACTUAL AND PROCEDURAL HISTORY

Defendant, Eleazar Morin, Jr., was arrested on October 19, 2001, and was charged by Criminal Complaint in this Court on October 22, 2001. Defendant appeared at the initial hearing with his attorneys, Richard McGee and Robert Yzaguirre. Defendant was detained after waiving his detention hearing on October 29, 2001, but retained his right to seek a detention hearing at a later date. (Docket Entry No. 16). On November 14, 2001, Defendant was indicted on four counts: Count One—conspiracy to distribute and possess with intent to distribute 500 or more grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846; Count Two—possess with intent to distribute over 500 grams of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 2;[1] Count Three—conspiracy to distribute and possess with intent to distribute 100 or more kilograms of a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846;[2] and Count Four—conspiracy to distribute and possess with intent to distribute five or more kilograms of a mixture or substance containing a detectable amount of cocaine and 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana in violation of 21 U.S.C. § 841(a)(1), in violation of 21 U.S.C. § 846. On November 30, 2001, Defendant appeared at the arraignment with McGee and entered a plea of not guilty.

Two co-defendants, Morin Sr. and Contreras, remain fugitives. Defendant has never sought a severance from his fugitive co-defendants.

Between December 11, 2001, and January 10, 2003,[3] Defendant and his attorneys, Yzaguirre and McGee, negotiated with the Government for a proffer of information and cooperation in exchange for compromises on various sentencing factors and a motion for a downward departure for substantial assistance. (Docket Entry No. 49, Attach. 2; Docket Entry No. 42, Attachs. A, B, and C). The Government concluded that the information Defendant was offer-

---

1. Defendant was charged in Counts One and Two along with Rodolfo Flores III, Juan Martinez, and Hector Contreras.

2. Defendant was charged in Count Three along with his father, Eleazar Morin, Sr.

3. The Government asserts that the last proffer session was held on January 8, 2003. (Dock-

et Entry No. 49 at 3 n. 2). The Government is mistaken. That is the date on the letter requesting the U.S. Marshal's Office to bring Defendant to the courthouse for the proffer session. The body of the letter identifies the date of the proffer session as January 10, 2003. (Docket Entry No. 49, Attach. 2).

ing was not sufficiently useful to warrant a substantial assistance motion because a person he was providing information on, his co-defendant father, was still a fugitive. (Docket Entry No. 42, Attach. C). Defendant's attorneys continued to try to persuade the Government that: (1) the guideline sentencing range was too severe for Defendant; and (2) the co-defendant father was going to cooperate to help his son. (Docket Entry No. 42, Attachs. B and C).

Eventually, the Government offered Defendant a plea agreement on November 22, 2002, which Yzaguirre objected to by letter on December 2, 2002. (Docket Entry No. 42, Attach. B). Based on further negotiations, the Government offered Defendant another plea agreement on December 9, 2002, in which the Government: (1) compromised on the offense level by recommending a base offense level of 36 instead of 38, (2) agreed to dismiss Counts Two and Four as to Defendant at sentencing, (3) agreed to recommend a reduction of three levels for acceptance of responsibility, (4) agreed to recommend a sentence at the bottom of the applicable guideline imprisonment range, but not less than the statutory minimum of twenty years, and (5) agreed to consider filing a motion for a downward departure for substantial assistance for Defendant provided Defendant's co-defendant father surrendered by March 1, 2003, entered a guilty plea to Count Three, and provided substantial proactive cooperation which would not be credited towards the father's sentence in any other prosecution. (Docket Entry No. 42, Attach. A).

On December 17, 2002, Yzaguirre requested that the Court set a plea hearing for December 29, 2002, so that Defendant could enter a plea of guilty. (Docket Entry No. 29). On December 23, 2002, the Court ordered a plea hearing for January 3, 2003. (Docket Entry No. 30). The hearing was canceled and the plea was not taken.

On March 17, 2003, Yzaguirre and McGee filed a Motion to Substitute Counsel Based on Conflict of Interest, alleging that a conflict of interest had arisen due to Yzaguirre's joint representation of Defendant and Defendant's co-defendant father and the plea negotiations which required the co-defendant father to surrender. (Docket Entry No. 36). The motion did not allege any conflict on McGee's part. Yzaguirre and McGee requested to be replaced by attorneys, Joseph A. Turner and Daniel H. Wannamaker. The Court granted the motion on March 20, 2003. (Docket Entry No. 40).

On March 31, 2003, Defendant filed a Motion to Dismiss for Speedy Trial Violation, alleging that because he has been detained in federal custody for seventeen months since his arrest without any court action beyond an arraignment and without the benefit of non-conflicted counsel, his rights to a speedy trial under the Sixth Amendment and the Speedy Trial Act were denied. In the alternative, Defendant alleges that the Court should dismiss his case with prejudice for unnecessary delay pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure. (Docket Entry No. 42).

The Government responded on May 12, 2003, contending that Defendant's motion should be denied because: (1) there was no constitutional or statutory speedy trial violation; and (2) there was no unnecessary delay. In the alternative, the Government argues that should the Court grant dismissal, Defendant's case should be dismissed without prejudice because: (1) Defendant's offense is serious; (2) the delay here was caused by Defendant; and (3) a dismissal with prejudice would harm the administration of justice by discouraging plea negotiations and encouraging more

trials through severing co-defendants. (Docket Entry No. 49).

## II. STANDARDS OF REVIEW

### A. *Constitutional Speedy Trial Violation*

■ The Sixth Amendment to the Constitution guarantees that "in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." The right to a speedy trial pursuant to the Sixth Amendment arises once a defendant is indicted, arrested, or otherwise accused. *United States v. MacDonald,* 456 U.S. 1, 6, 102 S.Ct. 1497, 71 L.Ed.2d 696 (1982).

■ In *Barker v. Wingo,* the Supreme Court established a tetrad standard for evaluating constitutional speedy trial claims: (1) duration of the delay, (2) reason for the delay, (3) defendant's assertion of the right, and (4) prejudice to the defendant. 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). None of these four factors is "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant." *Id.* at 533, 92 S.Ct. 2182. However, the length of the delay is a threshold in the inquiry, as without "some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 530, 92 S.Ct. 2182. If a constitutional speedy trial violation exists, the indictment against the defendant must be dismissed with prejudice. *Id.* at 522, 92 S.Ct. 2182.

### B. *Statutory Speedy Trial Violation*

The Speedy Trial Act requires that a defendant's trial begin:

> within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs.

18 U.S.C. § 3161(c)(1) (2003). Certain periods of delay are excluded from the seventy-day speedy trial clock, including: (1) "[a] reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted," 18 U.S.C. § 3161(h)(7) (2003); *United States v. Holyfield,* 802 F.2d 846, 847 (6th Cir.1986); and (2) "[a]ny period of delay resulting from the absence or unavailability of the defendant." 18 U.S.C. § 3161(h)(3)(A). An exclusion applicable to one defendant under § 3161(h)(7) applies to all co-defendants. *Holyfield,* 802 F.2d at 848; *Henderson v. United States,* 476 U.S. 321, 323 n. 2, 106 S.Ct. 1871, 90 L.Ed.2d 299 (1986).

A defendant not brought to trial within the seventy-day speedy trial time limit is entitled to have his information or indictment dismissed upon motion by the defendant. 18 U.S.C. § 3162(2) (2003). The defendant carries the burden of proof supporting the motion to dismiss, but the Government must prove any excludable time from the speedy trial time clock. *Id.* In determining whether to dismiss the case with or without prejudice, the Court must consider: (1) the seriousness of the offense, (2) the facts and circumstances of the case that led to the dismissal, and (3) the impact of a re-prosecution on the administration of justice. *Id.; United States v. Pierce,* 17 F.3d 146, 148 (6th Cir.1994).

### C. *Rule 48(b) Motion to Dismiss for Unnecessary Delay*

■ Pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure, a court may dismiss an indictment if unnecessary delay occurs in bringing the defendant to trial. Rule 48(b) is a restatement of the inherent power of the court to dismiss a

case with prejudice for lack of prosecution not amounting to a Sixth Amendment violation. *United States v. Hattrup*, 763 F.2d 376, 377 (9th Cir.1985); *United States v. Dreyer*, 533 F.2d 112, 113 n. 1 (3d Cir. 1976).

## III. DEFENDANT'S ARGUMENTS

### A. *Constitutional Speedy Trial Violation*

■ To assess Defendant's Sixth Amendment speedy trial violation claim, the Court will first examine each of the four *Barker* factors separately, then it will weigh these factors together.

### 1. *Duration of the Delay*

Defendant asserts that the seventeen months his case has been pending without a trial being scheduled is presumptively prejudicial and is sufficient to trigger a speedy trial analysis. The Government concedes that the Court should review the remaining three *Barker* factors due to the length of the delay, but contends that the length of the delay should not weigh heavily, if at all, against the Government because: (1) the case was not set for trial due to unavailable fugitive defendants, and the Court's practice is against setting trials until all the defendants are available or a motion to sever is granted; (2) the time that a defendant is unavailable is excluded from the statutory speedy trial clock; and (3) the fact that Defendant remained in detention throughout the period of the delay is attributable to Defendant's failure to seek a detention hearing.

■ "A one-year delay between accusation and the beginning of trial is generally considered 'presumptively prejudicial.'" *United States v. Cope*, 312 F.3d 757, 777–78 (6th Cir.2002), citing *Doggett v. United States*, 505 U.S. 647, 652 n. 1, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). The term "presumptively prejudicial" as used in this context "simply marks the point at which

courts deem the delay unreasonable enough to trigger the *Barker* enquiry." *Doggett*, 505 U.S. at 652 n. 1, 112 S.Ct. 2686. The length of the delay between accusation and trial alone is not sufficient to warrant the dismissal of a case. *United States v. Garner*, 529 F.2d 962, 967 (6th Cir.1976). "Closely related to the length of delay is the reason the government assigns to justify the delay." *Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

Because the length of the delay here, seventeen months, exceeds one year, the Court finds the delay presumptively prejudicial. However, the Court declines to weigh this threshold factor until it reviews the second *Barker* factor, the reason for the delay.

### 2. *Reason for the Delay*

Defendant acknowledges that he was negotiating with the Government during the delay but argues that the Government's insistence that his co-defendant father surrender in exchange for a downward departure motion as a condition of his plea agreement created a conflict of interest for Yzaguirre, who was simultaneously representing Defendant and Defendant's co-defendant father. Defendant contends that he was in effect held hostage by the Government's conditions for the plea agreement and Yzaguirre's conflicted representation of a co-defendant.

The Government maintains that the delay was attributable to Defendant, who continued to negotiate during the delay for a favorable plea agreement, sought to gain his co-defendant father's cooperation, and even told the Government that his co-defendant father had agreed to cooperate to assist him. The Government asserts that Defendant was seeking to help himself during the delay, and it merely provided Defendant reasonable time to try to meet

its conditions for a substantial assistance motion.

The Government contends that its willingness to negotiate with the Defendant rather than simply seek the harshest penalty against him should not be held against the Government. Instead, the Government urges that this factor should be weighed heavily against Defendant because Defendant is accountable for the delay, and the Government neither sought the delay, benefitted from the delay, nor acted in bad faith during the delay.[4]

Different weights attach to different reasons for delay in taking a case to trial. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182; *Doggett*, 505 U.S. at 657, 112 S.Ct. 2686. For instance, a deliberate delay by the government to gain tactical advantage should weigh heavily against the government, a more neutral reason such as negligence or overcrowded dockets should weigh less heavily against the government, and a valid reason, such as a missing witness, should not weigh against the government. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. In reviewing the second *Barker* factor, courts must determine whether the government or the criminal defendant is more to blame for the delay. *Doggett*, 505 U.S. at 651, 112 S.Ct. 2686.

Here, the Court finds no intentional delay or negligence on the part of the Government. The Court's practice of not commencing a case until all co-defendants are apprehended enables the Court "to conserve judicial resources by resolving the issues affecting all co-defendants in a particular criminal case in one proceeding." *Garner*, 529 F.2d at 967. Such a policy excuses the Government from proceeding with a case, where as here, the Government, despite diligent efforts, was unable to apprehend other indicted co-defendants and Defendant failed to assert his right to a speedy trial through a motion for severance. *Id.*

Moreover, the Government's attempt to negotiate a plea agreement with Defendant was undertaken in good faith. In fact, the record before the Court shows that all of the delay here was attributable to Defendant. On December 2, 2002, U.S. Attorney Sunny Koshy wrote to Yzaguirre regarding the plea negotiations, making the following specific comments about Defendant's co-defendant father:

> I note that I have informed you *repeatedly* that the father cannot stay a fugitive and have me credit any cooperation to his son. Furthermore, any cooperation that he is attempting to provide has not been coordinated with this district. It appears that he is trying to get credit for himself in Texas as well as his son in Tennessee, and perhaps also for himself in Tennessee. This situation continues to be unacceptable in this district, and I do not intend to recommend any kind of substantial assistance credit

---

4. In the facts section of its response brief, the Government dismisses Defendant's conflict of interest argument, contending: (1) Defendant never alleged that his other original counsel, McGee, had a conflict of interest; (2) McGee, lacking a conflict of interest, could have raised concerns about a conflict of interest or speedy trial rights with the Government or the Court earlier; (3) the condition it sought that Defendant's co-defendant father surrender did not make the father and son adversaries because the plea agreement would have benefitted both "since cooperation by both defendants would benefit both defendants;" and (4) neither Yzaguirre nor McGee ever claimed that their plea negotiations with the Government placed Yzaguirre in an actual conflict of interest (Docket Entry No. 49 at 4). These arguments should have been raised by the Government either in response to Defendant's Motion to Substitute Council Based on Conflict of Interest (Docket Entry No. 36) or in a timely filed Motion to Reconsider. Local Rule 8(b)(3). For this reason, the Court will not consider these arguments here.

for either of the Morins under this arrangement.

Docket Entry No. 42, Attach. C (emphasis added).

Assuming as Defendant asserts that the plea negotiations created a potential conflict of interest for Yzaguirre and McGee because the Government insisted that Defendant's co-defendant father surrender and Yzaguirre represented both Defendant and Defendant's father, Koshy's letter constitutes evidence that Yzaguirre and McGee were on notice that a conflict of interest existed as early as December 2, 2002. Indeed, Koshy's emphasis that he had repeatedly insisted that Defendant's co-defendant father must surrender indicates that Yzaguirre and McGee were on notice earlier than that date of a potential conflict of interest. Yet, Yzaguirre and McGee did not file their Motion to Substitute Counsel Based on Conflict of Interest until three and one-half months later on March 17, 2003, despite the requirement that "defense attorneys have the obligation upon discovering a conflict of interest to advise the court at once of the problem." *Holloway v. Arkansas*, 435 U.S. 475, 485–86, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). Thus, this three and one-half month period weighs heavily against Defendant in the speedy trial analysis.

As for the bulk of the negotiating period, which occurred prior to December 2, 2002, the Supreme Court in *Holloway* further noted that:

> The potential for conflict of interest in representing multiple defendants is so grave that ordinarily a lawyer should decline to act for more than one of several co-defendants except in unusual situations when, after careful investigation, it is clear that no conflict is likely to develop and when the several defen-

dants give an informed consent to such multiple representation.

*Holloway*, 435 U.S. at 486 n. 8, 98 S.Ct. 1173 (citation omitted). Again, assuming that the surrender of Defendant's co-defendant father created a potential conflict of interest to Yzaguirre and McGee as Defendant asserts, this conflict should have been apparent at the outset of the joint representation. Given that the co-defendant father was a fugitive, it was foreseeable that the Government would ask a detained close relative, such as the Defendant son, to try to persuade the fugitive co-defendant father to surrender.[5] Yet Yzaguirre and McGee did nothing to avoid this potential conflict of interest, nor did they seek consent for the joint representation. So any delay caused by the plea negotiations prior to December 2, 2002, also weighs heavily against Defendant.

Accordingly, the Court weighs the first two *Barker* factors heavily against the Defendant.

### 3. Defendant's Assertion of the Right to a Speedy Trial

Defendant submits that he filed his speedy trial motion as quickly as possible after securing his replacement, non-conflicted counsel. He further asserts that the Government is at fault for not bringing his conflicted counsel to the Court's attention.

The Government responds that Defendant's argument fails because only one of Defendant's original counsel, Yzaguirre, represented multiple defendants, while the other, McGee, had no alleged conflict of interest. The Government further asserts that the third *Barker* factor weighs heavily against Defendant because Defendant nev-

---

**5.** Defendant's replacement counsel admit that Defendant was represented by conflicted counsel from the inception of his case. (Docket Entry No. 42 at 3).

er asserted his speedy trial rights at all during the delay, but instead acquiesced in the delay in search of a favorable plea agreement.

The third *Barker* factor considers the force and frequency of a defendant's assertion of his right to a speedy trial. 407 U.S. at 529, 92 S.Ct. 2182. The Sixth Amendment speedy trial clause primarily protects those who assert the right, not those who acquiesce in the delay. *Id.* at 521, 529, 532, 92 S.Ct. 2182. "A defendant should give some indication, prior to his assertion of a speedy trial violation, that he wishes to proceed to trial." *United States v. Munoz–Amado,* 182 F.3d 57, 62 (1st Cir.1999).

Here, Defendant never asserted his right to a speedy trial during the delay. Likewise, Defendant improperly attempts to shift his burden of seeking a speedy trial onto the Government. *Barker* squarely placed that burden on the defendant. Accordingly, the third *Barker* factor weighs heavily against Defendant.

### 4. *Prejudice to Defendant*

Defendant contends that because the first three *Barker* factors weigh so heavily in his favor, he should not be required to show any prejudice. Alternatively, Defendant contends that the fourth *Barker* factor weighs in his favor because he was detained in federal prison for over seventeen months without benefit of counsel acting on his behalf.

The Government responds that the delay was for Defendant's benefit, hence prejudice should not be presumed. The Government also cautions that courts are reluctant to find a constitutional speedy trial violation in the absence of actual prejudice.

In the alternative, the Government maintains that Defendant's defense was not impaired because: (1) he was caught red-handed and on extremely incriminating tape recordings; (2) his allegedly conflicted counsel, Yzaguirre, was not conflicted; (3) McGee, his defense co-counsel, had no conflict of interest; and (4) Defendant states insufficient facts to establish that he was actually prejudiced.

■ Whether the defendant must show actual prejudice depends on whether the defendant or the government is responsible for the delay. *Doggett,* 505 U.S. at 655–58, 112 S.Ct. 2686. Where the government delays in bad faith or is negligent in pursuing a defendant, prejudice is presumed. *Id.* at 656, 112 S.Ct. 2686. However, where the government acts diligently or the delay is predominantly attributable to the defendant, the defendant must show actual prejudice. *Id.; Wilson v. Mitchell,* 250 F.3d 388, 396 (6th Cir.2001).

In *Barker,* the Supreme Court identified three interests of the defendant that must be considered when assessing prejudice: (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern of the accused, and (3) limiting the possibility that the defense will be impaired. 407 U.S. at 532, 92 S.Ct. 2182. *Barker* identified the third interest as the most serious. *Id.*

The Court will first determine whether prejudice may be presumed here. If not, the Court will determine whether Defendant establishes actual prejudice.

*a. Presumptive prejudice.* Contrary to Defendant's assertion, the Court has determined that the first three *Barker* factors do not weigh in his favor. Moreover, the record shows that the Government diligently began plea negotiations with Defendant on December 11, 2001, less than two weeks after Defendant was arraigned on November 30, 2001. And the record shows no evidence of bad faith or negligence on the Government's part in pursuing the plea negotiations. Thus, the delay in Defendant's prosecution was not due to negligence or bad faith on the Govern-

ment's part. Rather, the delay was due entirely to Defendant who was seeking a favorable plea agreement. Accordingly, prejudice cannot be presumed here, and Defendant must establish actual prejudice.

*b. Actual prejudice.* Defendant alleges that he was prejudiced being represented by Yzaguirre because Yzaguirre, who was representing both Defendant and Defendant's co-defendant father, became conflicted when the Government insisted that his father's surrender to federal authorities was a condition precedent to Defendant's plea agreement.

In response, the Government maintains that: (1) Yzaguirre was not conflicted; (2) Defendant's alleged inability to defend himself during the delay due to Yzaguirre's alleged conflict of interest neglects the fact that Defendant never alleged that his co-counsel McGee had a conflict of interest; (3) Defendant does not state what he could or would have done to defend himself in the interim, or how his defense has actually been impaired; (4) Defendant was not prejudiced at all by the delay since he used the delay to attempt to mitigate his probable punishment; and (5) Defendant cannot complain about his pretrial detention given that he never sought a detention hearing.

"[A]llegations of prejudice must be specific, concrete and supported by the evidence—vague, speculative or conclusory allegations will not suffice." *United States v. Fuesting,* 845 F.2d 664, 669 (7th Cir. 1988).

Because Defendant alleges no facts to support claims of oppressive pretrial incarceration or anxiety and concern, the first two interests under the *Barker* prejudice factor are inapplicable here. This leaves the Court to examine Defendant's claim for actual prejudice under the third interest of the *Barker* prejudice factor, impairment of the defense.

As aforementioned, the Court will not consider the Government's conflict of interest arguments here as the Government had an opportunity to present them to the Court on an earlier occasion but did not. *See supra* n. 4. Assuming Defendant's counsel were conflicted, the Government's remaining arguments fail because Defendant offers a persuasive explanation for how he was impaired in his defense, *i.e.,* his conflicted counsel could not be expected to simultaneously protect both his interests and the adverse interests of his co-defendant father.

Accordingly, the Court weighs the fourth *Barker* factor moderately in Defendant's favor. The Court weighs the fourth *Barker* factor moderately, not heavily, in Defendant's favor because Defendant's original counsel was aware of the conflict of interest early on in the plea negotiations but took no corrective action until they filed their motion to substitute counsel on March 17, 2003.

### 5. *All Factors Together*

Having determined that the first, second, and third *Barker* factors weigh heavily against the Defendant and the fourth weighs moderately in Defendant's favor, the Court finds that overall Defendant did not suffer a violation of his constitutional right to a speedy trial.

### B. *Statutory Speedy Trial Violation*

Defendant alleges that he is entitled to dismissal under the Speedy Trial Act because sixteen months have passed since his arraignment on November 30, 2001, and no periods of time in that sixteen month delay qualify for exclusion from the speedy trial clock. Although conceding that his crime is serious, Defendant contends that the Court should dismiss his case with prejudice because of the facts and circumstances surrounding the delay. Defendant

maintains that those facts and circumstances show that through no fault of his own, his case has remained on the Court's docket without being set for trial while he was hampered by conflicted counsel. Defendant complains that he is a hapless victim, not the creator of the delay.

The Government responds that there has been no statutory speedy trial violation because the speedy trial clock never ran due to the two still fugitive co-defendants. The Government contends that the entire period of the delay is reasonable given that: (1) its plea negotiations with Defendant involved one of the two fugitive co-defendants, Defendant's father, with whom Yzaguirre claimed to have contact; and (2) Yzaguirre claimed that Defendant's father was interested in cooperating with the Government. These facts, the Government argues, establish proof that the Government was acting diligently and reasonably in pursuing the fugitives, and thus, the entire delay should be excludable from the speedy trial clock. In the alternative, the Government argues that the period of time between the indictment and January 2, 2003, the scheduled plea date, is excludable from the speedy trial clock since the parties were negotiating a plea agreement throughout that time.

Finally should the Court find that the Speedy Trial Act was violated, the Government argues that the dismissal should be without prejudice because: (1) the crime, possession with intent to distribute methamphetamine, marijuana, and cocaine, is serious; (2) the facts and circumstances show that the delay was due to Defendant, who entered the plea negotiations for his own benefit and led the Government to believe that a fugitive co-defendant was willing to cooperate with the Government; and (3) a dismissal with prejudice would harm the administration of justice because it would preclude the Government from offering future defendants the opportunity

to earn a substantial assistance departure and would result in more trials or less favorable plea agreements which would cost the public a substantial amount of money to cover the high costs of incarceration.

█ Where a defendant fails to move for severance from a co-defendant, days excludable from the speedy trial clock for the co-defendant apply to the defendant as well. *United States v. Culpepper*, 898 F.2d 65, 66–67 (6th Cir.1990). In other words, to invoke the reasonableness limitation of § 3161(h)(7), a motion for severance must have been both filed and denied. *United States v. Payden*, 620 F.Supp. 1426, 1428–30 (S.D.N.Y.1985).

> The requirement that counsel move for a severance is well grounded because, in multi-defendant cases, Congress enacted Section 3161(h)(7) to express its strong preference for joint trials and for "avoiding waste of resources on unnecessary severances and separate trials." The ... Speedy Trial Act was not meant to be applied so as to give "gamesmanship priority over the practicalities of trial management." The scheme of Section 3161(h)(7) is explicit. When a defendant is joined for trial with a co-defendant as to whom the time for trial has not run, computation of time within which the trial of the defendant must commence is a reasonable period after a motion for severance has been denied. The necessity for the severance motion is to alert the trial court to the defendant's claims of Speedy Trial prejudice. If the Court denies the motion, it must bring the case to trial within a reasonable time thereafter. If no motion for severance is made, a pending motion of a co-defendant stops the Speedy Trial clock as to all defendants.

*United States v. Vasquez*, No. 87 Cr.526(MJL), 1989 WL 82422, at *6

(S.D.N.Y. July 17, 1989), quoting *United States v. Rush*, 738 F.2d 497, 503, 505 (1st Cir.1984); *see also Culpepper*, 898 F.2d at 68.

■ Here, Defendant never filed a motion for severance from the fugitive co-defendants whose speedy trial time clocks never started because they were unavailable. Hence, the reasonableness limitation of § 3161(h)(7) does not apply to Defendant. To allow otherwise would reward Defendant's gamesmanship of prolonging plea negotiations for such a lengthy period of time with the promise of securing the surrender of a co-defendant who ultimately refused to surrender and then claiming that the lengthy passage of time constituted a statutory speedy trial violation. Such a manipulation of § 3161(h)(7) cannot

stand. *See Culpepper*, 898 F.2d at 68 (noting Congressional belief that the efficiency and economy of joint trials far outweighs the desirability of granting severance where the criteria is simply the passage of time).

Having found no violation of the Speedy Trial Act and thus no grounds for dismissal, the Court need not reach the issue of whether Defendant's requested dismissal should be with or without prejudice.[6]

## C. *Rule 48(b) Violation*

Defendant contends that the Court should dismiss his indictment pursuant to Rule 48(b) of the Federal Rules of Criminal Procedure due to the Government's unnecessary delay in bringing Defendant to trial. The Government maintains that

---

**6.** The Court notes that neither party raises the question of whether Defendant's lengthy seventeen-month pre-trial detention violates the due process provision of the Speedy Trial Act. Here, Defendant complains that the thirteen-month delay between his arraignment on November 30, 2001, and the Court's Order for a plea hearing on December 23, 2002, occurred through no fault of his own but rather was due to his conflicted counsel. Defendant further complains that when the time between his arrest on October 19, 2001, and arraignment is included, his case had been pending for seventeen months by the time he filed his Motion to Dismiss. The record shows that Defendant's non-conflicted new counsel filed Defendant's Motion to Dismiss eleven days after assuming Defendant's case.

Pursuant to 18 U.S.C. § 3164(a)(1) and (b), the trial of a "detained person who is being held in detention solely because he is awaiting trial ... shall be accorded priority" and "shall commence not later than ninety days following the beginning of such continuous detention...." And while § 3164(b) further provides that "[t]he periods of delay enumerated in section 3161(h) are excluded in computing the time limitation specified in this section," courts have recognized that the "reasonable delay" exclusion of § 3161(h)(7) has a different meaning and application pursuant to § 3164 than under § 3161 because what might be a reasonable delay to accom-

modate conservation of public resources by trying co-defendants together pursuant to § 3161 might be an unreasonable, indefinitely prolonged incarceration violating due process pursuant to § 3164. *United States v. Theron*, 782 F.2d 1510, 1516 (10th Cir.1986). This is especially so where the defendant has at all times sought immediate trial, has continually moved for severance, and has taken no steps to delay his trial. *Id.* Nonetheless, § 3164(c) expressly excludes delays attributable to Defendant *or his counsel*. *United States v. Howard*, 590 F.2d 564, 568 n. 3 (4th Cir.1979).

While the time between Defendant's arrest and detainment on October 19, 2002, and the beginning of his plea negotiations with the Government on December 11, 2001, would count under the Speedy Trial Act due process clock, none of the time thereafter would. The Court finds that because the delay between Defendant's arraignment and the filing of his Motion to Dismiss was due either to his conflicted or non-conflicted counsel, this entire period of time is expressly excluded from the Speedy Trial Act due process clock by § 3164(c). The plea negotiations were a valid reason for delay, were conducted for Defendant's benefit, and provided the Government no tactical advantage over Defendant. Moreover, Defendant never moved for a severance or sought immediate trial. Accordingly, Defendant has no grounds for raising a due process violation under the Speedy Trial Act.

Defendant's argument lacks merit because the Government did not seek the delay, and the delay was necessary to assist Defendant's efforts to mitigate his sentence and to try to capture the fugitive co-defendants.

A Rule 48(b) dismissal should be imposed only in extreme circumstances, such as where the delay is purposeful or oppressive. *United States v. Sears, Roebuck & Co.*, 877 F.2d 734, 737, 739 (9th Cir.1989). A district court must exercise this power with caution and only after forewarning the prosecution of the consequences. *Id.* at 737–38. "The caution requirement is satisfied where the reason for dismissal is 'prosecutorial misconduct and demonstrable prejudice or substantial [threat] thereof.' " *Id.* at 738 (citation omitted).

A Rule 48(b) dismissal would be improper here because: (1) the Government has committed no misconduct which would call for dismissal; and (2) all of the delay here is attributable to Defendant. Accordingly, the Court denies Defendant's motion for dismissal pursuant to Rule 48(b).

## IV. CONCLUSION

Having determined that Defendant's Motion to Dismiss lacks merit on all grounds raised and on due process grounds, Defendant's Motion to Dismiss will be DENIED.

An appropriate ORDER will be entered.

### *ORDER*

Pending before the Court is Defendant's Motion to Dismiss (Docket Entry No. 42), to which the Government has responded in opposition. For the reasons explained in the Memorandum entered contemporaneously herewith, Defendant's motion is hereby DENIED.

It is so ORDERED.