534 F.2d 578
 2 Fed. R. Evid. Serv. 542
 UNITED STATES of America, Appellee,
v.
Morris SEGAL and George Henry Hurst, Jr., Appellants in Nos.
75-1534 and 75-1539.
 Nos. 75-1534 and 75-1539.
 United States Court of Appeals,
Third Circuit.
 Argued Feb. 6, 1976.
Decided April 7, 1976.
 
 Stephen A. Sheller, Pechner, Sacks, Dorfman, Wolffe, Moss, Rosen, Richardson & Rounick, Philadelphia, Pa., for appellant, George Henry Hurst, Jr.
 Marvin Comisky, Thomas A. Bergstrom, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for appellant, Morris Segal.
 Robert E. J. Curran, U.S. Atty., J. Clayton Undercofler, III, First Asst. U.S. Atty., Walter S. Batty, Jr., Asst. U.S. Atty., Chief, App. Section, Philadelphia, Pa., for appellee.
 Before SEITZ, Chief Judge, and VAN DUSEN and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 Defendants were tried jointly and convicted of conspiracy and bribery of a public official in violation of 18 U.S.C. §§ 371 and 201(b)(2), arising out of the payment of money to an Internal Revenue agent to falsify a tax liability. We reverse the convictions and remand for a new trial because the voir dire examination of the jury panel and the cross-examination of the prosecution's witnesses were improperly restricted.
 
 
 2
 Defendant Segal was a certified public accountant who represented the defendant Hurst during an audit of his tax returns by Internal Revenue Agent Edward Sigmond. During the period from June to December, 1974, Sigmond contacted Segal on a number of occasions. At their first meeting, Segal intimated that he might offer Sigmond a bribe, a matter which the agent reported to the Inspection Service. Thereafter, on visits to Segal's office, Sigmond wore a body recorder. He also recorded a number of telephone conversations with Segal and one with Hurst.
 
 
 3
 At the trial, Sigmond was the principal government witness. He testified that Segal offered to obtain $20,000.00 from Hurst, of which $15,000.00 would go to the agent in return for submitting a false audit report, and the remaining $5,000.00 would be retained by the C.P.A. In December of 1974, Sigmond received $5,000.00 from Hurst through Segal, with a promise that the remainder would follow. On January 7, 1975, Sigmond telephoned Hurst and recorded the conversation in which Hurst admitted providing the bribe and promised to pay the amount still due. Hurst was arrested the following day and gave a statement to Internal Revenue officials admitting his participation and also implicating Segal.
 
 
 4
 On appeal, both defendants claim that the voir dire of prospective jurors was unduly limited and that the cross-examination of Sigmond was improperly restricted. Hurst also contends that because a redacted version of his confession presented an erroneous view of his part in the affair, a severance was required.
 
 I.
 
 5
 Counsel for the defense submitted proposed voir dire questions designed to supplement the court's inquiries. Segal's attorney filed suggested questions before the date set for jury selection and Hurst's counsel tendered others after the court had concluded the standard interrogation. The judge began the voir dire by asking each venireman to state his occupation for the preceding five years and that of his spouse or other employed person in the household. Thereafter, general questions were propounded to the panel, including the following:
 
 
 6
 "Is or has any member of your immediate family ever been an official or employee of the United States Government?"Seven members of the panel raised their hands indicating an affirmative answer to this question. The next query was:
 
 
 7
 "Are you or have you ever been an official or employee of the United States Government?"
 
 
 8
 Seven persons indicated an affirmative answer to this question. Twelve of the 31 veniremen answered at least one of these two questions affirmatively.
 
 
 9
 After addressing further general questions to the panel, the court refused to ask the more specific questions submitted by defendant Segal. Two of these would have inquired whether any member of the panel or his immediate family was employed by the Internal Revenue Service or similar departments of the city or state. Hurst's counsel asked that the prospective jurors, who had indicated employment by the federal government, be asked what specific activities they had in their last employment. That request was also declined.
 
 
 10
 In federal cases, it is approved procedure for the trial judge to question the veniremen on voir dire. This practice expedites the selection of an impartial jury and prevents the excessively lengthy voir dire proceedings which occur in some jurisdictions. The Bench Book, published under the auspices of The Federal Judicial Center, contains a list of suggested questions and apparently was the source of most of the queries utilized by the judge in this case. While these questions are adequate in most instances, situations do arise where supplemental inquiries should be made.
 
 
 11
 The trial judge has wide discretion to determine the scope and content of the voir dire. See United States v. Napoleone, 349 F.2d 350 (3d Cir. 1965); Fed.R.Crim.P. 24(a). But the parties have the right to some surface information about prospective jurors which might furnish the basis for an intelligent exercise of peremptory challenges or motions to strike for cause based on a lack of impartiality. Ristaino v. Ross, --- U.S. ----, ----, 96 S.Ct. 1017, 1021, 47 L.Ed.2d 258, 263, 264, 44 U.S.L.W. 4305, 4308 n. 9 (1976); Kiernan v. Van Schaik, 347 F.2d 775 (3d Cir. 1965). See also United States v. Robinson, 485 F.2d 1157 (3d Cir. 1973); United States v. Poole, 450 F.2d 1082 (3d Cir. 1971). Cf. United States v. Wooton, 518 F.2d 943 (3d Cir. 1975).
 
 
 12
 Because of the circumstances in this case, the defendants would reasonably need to know whether any member of the panel or any person in his family had ever been employed by the Internal Revenue Service. The possibility of lingering loyalty to the service, friendship of persons still employed there, or knowledge of agency procedures are all factors which counsel would weigh in deciding whether to challenge. Since it was known that a number of veniremen had been employed by the government, the requests by defense counsel were reasonable and should have been honored. As the Court said in United States v. Wood, 299 U.S. 123, 134, 57 S.Ct. 177, 179, 81 L.Ed. 78, 82 (1936):
 
 
 13
 "In dealing with an employee of the government, the court would properly be solicitous to discover whether in view of the nature or circumstances of his employment, or of the relation of the particular governmental activity to the matters involved in the prosecution, or otherwise, he had actual bias, and, if he had, to disqualify him."
 
 
 14
 Similarly, past employment by the specific agency prosecuting the case is a matter which should be explored upon a party's request. The refusal to do so requires that a new trial be granted.
 
 II.
 
 15
 Since upon a retrial it is likely that the scope of cross-examination will again become an issue, we shall discuss it at this time.
 
 
 16
 Agent Sigmond testified about the several conferences and telephone conversations he had with Segal from May to December, 1974. Excerpts from some of the recordings were played for the jurors who were supplied with transcripts of these conversations for use while listening to the tapes. Since some of the recordings, particularly those of all-day conferences, were quite lengthy, some editing was necessary. Obviously, much of the material was inconsequential, and playing all of it would have unduly prolonged the trial and aided no one.
 
 
 17
 In an effort to keep the trial moving, the judge ruled that on cross-examination defense counsel would not be permitted to replay tapes which had been heard during direct examination. He directed that cross-examination be conducted by use of the transcripts. Defense counsel assert that they wished to replay portions of the tape rather than relying on the transcripts because voice inflections were important.
 
 
 18
 If in any specific instance this contention should appear to be valid, the court should consider the advisability of allowing replay. In general, however, we cannot find error in the court's suggestion that the transcript be used in reviewing material which had once been played.[1] The court's policy offered a practical way to eliminate the delays which necessarily accompany the playing of selected excerpts from lengthy and unindexed tapes.
 
 
 19
 However, the court also prohibited defense counsel from using transcripts or playing parts of a recording which had not been heard during direct examination. This restriction was based on the premise that cross-examination should not exceed the scope of direct and that the defendants were free to present the proffered evidence in their own case. We think this limitation unduly narrowed the scope of cross-examination and hindered proper presentation of the defense case.
 
 
 20
 Federal Rule of Evidence 611(b) provides that cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. While the trial court has wide discretion to prevent repetition, harassment of the witness or production of irrelevant material, the right of cross-examination is of constitutional dimension and may not be denied. Davis v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974). Therefore, if a matter has been raised on direct examination, generally cross-examination must be permitted. Moreover, questioning of the witness which tests his perception, memory, or otherwise tends to discredit him is proper. Davis v. Alaska, supra.
 
 
 21
 One of defendants' complaints is directed at an incident which occurred during the cross-examination of Agent Sigmond. He had testified about statements made during a conference with Segal on September 16, 1974. Although Sigmond used a body recorder on that date and a transcript had been prepared, the tape was not played to the jury during the direct examination. On cross-examination, defense counsel's attempts to use either selected portions of the tape or the transcript for that day were blocked by the court. Counsel for Segal explains in his brief:
 
 
 22
 ". . . the meeting of September 16, 1974 and the tape recorded conversations arising therefrom became crucial to the defense in their endeavor to show that, in fact, at no time during this meeting did the defendant attempt to or offer to Agent Sigmond a bribe in the form of money or gratuities and that rather, certain conversations recorded on that day indicated that Agent Sigmond was himself attempting to solicit a bribe from the defendant."
 
 
 23
 Since the court did permit some inquiry about that meeting and restricted counsel only on the use of the recording, is seems that the difficulty centered on the question of what constituted the scope of direct examination. In our view, the scope is to be measured by the subject matter of the direct examination rather than by specific exhibits which are introduced at that time. See Federal Rule of Evidence 611(b).
 
 
 24
 Moreover, the fact that some of the points which defendant sought to explorecould have been introduced in the defense case is not determinative. That specific evidence could have been a part of the defense does not preclude its development on cross-examination if the prosecution makes the subject matter part of its direct testimony. United States v. Lewis,447 F.2d 134 (2d Cir. 1971).
 
 
 25
 The ruling of the trial court in this instance was erroneous because it unduly limited cross-examination.[2]
 
 III.
 
 26
 After his arrest, Hurst gave a statement to Internal Revenue officials in which he said that Segal had contacted him about the tax deficiency and had indicated $10,000.00 in cash was needed to pay somebody for reduction of the tax. Thereafter, Mrs. Hurst took $5,000.00 in small bills to Philadelphia where she gave them to Segal's business partner. Hurst's statement was redacted by deleting Segal's name in an effort to avoid the problem presented by Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).
 
 
 27
 On cross-examination of the I.R.S. official to whom the statement had been given, Hurst's counsel sought to establish entrapment by bringing out the references to Segal. The court sustained Segal's objection to the questions on this point and denied Hurst's motion for severance.
 
 
 28
 The grant of severance is a matter within the discretion of a trial court and involves the balancing of a number of considerations. Foremost of these is prejudice to the defendant. That, however, should be real, not fanciful. It must be considered together with the desirability of joint trials, particularly those involving a legitimate conspiracy count such as was present here. The circumstances of each case will control the decision.
 
 
 29
 The references which Hurst's lawyer sought to elicit from the witness were arguably within the scope of Bruton. But considering the overwhelming nature of the evidence, mention of Segal's name might have been harmless beyond a reasonable doubt. See Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 384 (1969). After listening to Sigmond's tape, the jury was well aware that Segal had acknowledged contacting Hurst in December. Similarly, it is difficult to conceive the existence of any doubt that the $5,000.00 in cash had been delivered to Segal because the recorded conversation between him and Sigmond as they counted the money had been played for the jurors. Nevertheless, the trial judge's conclusion that Bruton required editing of Hurst's statement was certainly not incorrect.
 
 
 30
 The redaction, however, raises another issue. The case at bar is unusual in that the objection to admission of the redacted confession comes not from a co-defendant who would be implicated by hearsay evidence, but from the defendant who gave the statement. He does not assert error in inclusion as a co-defendant usually does but, rather, complains of exclusion. Hurst alleges prejudice because he could not produce evidence which would have been admissible on cross-examination but for Segal's objection based on lack of confrontation.
 
 
 31
 Essentially, then, Hurst's position is that his case should have been severed because of the restriction on his cross-examination. Again, we are dubious that any actual prejudice exists on the record of the first trial. Hurst wished to bring out his comments that Segal had a part in arranging the bribe. To believe that the jury was not fully aware of this fact, in view of the tape recordings, is to live in a never-never land. While the issue is an interesting one, we do not pass upon it because we have granted a new trial on other grounds.
 
 
 32
 The motion for severance, if made on retrial, must be decided on the record that is before the trial court at that time. We cannot anticipate what circumstances may exist then. For example, if Hurst should decide to testify on his own behalf, then the question would become moot because Segal could then have the right of cross-examination and the raison d' etre of Bruton would not exist. Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971); Government of Virgin Islands v. Ruiz, 495 F.2d 1175 (3d Cir. 1974). Alternatively, in view of other evidence in the case, Hurst may decide not to object to the deletions, or Segal may not insist upon redaction at the second trial.
 
 
 33
 We are not called upon to consider the propriety of alternatives which would obviate the Bruton problem: e.g., empanelling two separate juries as was done in United States v. Sidman, 470 F.2d 1158 (9th Cir. 1972), cert. denied, 409 U.S. 1127, 93 S.Ct. 948, 35 L.Ed.2d 260 (1973), or holding a bifurcated trial as was done in United States v. Crane, 499 F.2d 1385 (6th Cir.), cert. denied, 419 U.S. 1002, 95 S.Ct. 322, 42 L.Ed.2d 278 (1974). See also United States v. Rowan, 518 F.2d 685 (6th Cir.), cert. denied, --- U.S. ----, 96 S.Ct. 368, 46 L.Ed.2d 284, 44 U.S.L.W. 3280 (1975). The propriety of these procedures can be considered if and when they are employed by the district court.
 
 
 34
 The judgment of the district court will be reversed and a new trial ordered as to both defendants.
 
 
 
 [1]
 Defendant Hurst was denied the opportunity to replay a recording of a telephone conversation of January 7, 1975. Apparently, the purpose was to show that the beginning of the call had not been recorded. However, on cross-examination that fact was admitted by the agent and we do not think the trial judge erred in refusing to play the recording a second time
 
 
 [2]
 We recognize that the playing of excerpts from tapes can lead to delays during the trial. However, a delay may be obviated through counsel's use of cassettes or tapes prepared in advance which contain only the relevant portions of the conversations and are adequately indexed