**JOSE ANTONIO SOTO, Appellant**
**v.**
**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**
**SOTO v. GOVERNMENT OF THE VIRGIN ISLANDS**

D.C. Crim. App. No. 2002/76

District Court of the Virgin Islands

Division of St. Croix

October 19, 2004

364

*For Appellant*: HAROLD R. WASHINGTON, TPD.

*For Appellee*: MATTHEW PHELAN, AAG.

FINCH, *Chief Judge, District Court of the Virgin Islands*; MOORE, *Judge of the District Court of the Virgin Islands*; and SWAN, *Judge of the Territorial Court, Sitting by Designation*

## MEMORANDUM OPINION

(October 19, 2004)

Jose Antonio Soto ["Soto"] was convicted in Territorial Court of one count of unlawful sexual contact with a minor. He presents the following issues for review:

1. Whether title 14, sections 1708(2) and (3) are unconstitutionally void for vagueness;
2. Whether a defendant in a criminal case is entitled to a proposed *voir dire* question of the jury panel regarding their involvement with a local women's advocacy group, and;
3. Whether the trial court improperly permitted hearsay testimony that didn't fall within the accepted exceptions to the hearsay rule.

For the reasons stated below, the defendant's conviction will be affirmed.

## I. STATEMENT OF FACTS & PROCEDURAL HISTORY

Soto was employed as a maintenance worker at the Country Day School on St. Croix. On September 17, 2001, Maria Lestrade ["Lestrade"], a custodian at the school, entered the classroom of Allisyn Dedinsky ["Dedinsky"]. Dedinsky had left the room but left a 5-year old girl sleeping on the floor near the door. As Lestrade entered the room, she saw Soto leaning over the sleeping child, his hand on her vagina. [Supplemental Appendix ("Supplemental App.") at 103-04]. The girl's dress was pushed up on her chest, exposing her underwear. Lestrade said she witnessed the incident as she stood approximately three to four feet from Soto. [Supplemental App. at 110]. Soto left the classroom, encountering Dedinsky on his way out. Immediately after witnessing the incident, Lestrade ran to an adjoining room to notify another teacher, Georgene Schuster ["Schuster"] what she had witnessed. [Supplemental App. at 104-05].

Soto was charged with one count of unlawful sexual contact in the first degree in connection with the incident, pursuant to title 14, section 1708(2) of the Virgin Islands Code. [Appendix ("App.") at 15-16]. Prior to trial, he filed a motion to suppress the testimony of Schuster or Dedinsky. The court denied the motion to suppress as to Schuster, but granted it as to Dedinsky. [App. at 76-79]. Soto also challenged section

1708(2) as void for vagueness; however, the court rejected that challenge. [App. at 60-62]. Soto was convicted of unlawful sexual contact, and this appeal followed.

## II. DISCUSSION

### A. Jurisdiction and Standard of Review

This Court has jurisdiction to review the judgments and orders of the Territorial Court in criminal cases, except those resulting from a guilty plea which present no constitutional considerations. *See* VIRGIN ISLANDS CODE ANN. tit. 4, § 33 (1997). We review the trial court's factual determinations for clear error. *See Welch & Forbes, Inc. v. Cendant Corp. (In re Cendant Corp. Prides Litig.)*, 233 F.3d 188, 193 (3d Cir. 2000). However, its application of legal precepts and issues of constitutional dimension are subjected to plenary review. *See Hess Oil V.I. Corp. v. Richardson*, 894 F. Supp. 211, 32 V.I. 336 (App. Div. 1995). Finally, the court's admission of evidence is reviewed for abuse of discretion, to the extent not based on an interpretation of the Federal Rules of Evidence. *See Williams v. Virgin Islands*, 271 F. Supp. 2d 696, 702 (D.V.I. App. Div. 2003).

### B. Vagueness Challenge

Appellant first argues the statute under which he was convicted is unconstitutionally vague in its failure to specifically define terms used to describe or to criminalize the prohibited conduct.

To pass constitutional muster, a criminal statute must give fair notice of the prohibited conduct. *See Connally v. General Const. Co.*, 269 U.S. 385, 391, 70 L. Ed. 322, 46 S. Ct. 126 (1926). A statute whose terms are not readily discernible by men of ordinary intelligence, or which fails to set standards for its enforcement, violates the Fourteenth Amendment to the United States Constitution.[1] *See Connally*, 269 U.S. at 391; *Kolender v. Lawson*, 461 U.S. 352, 357-358, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983). The constitutionality of a statute is to be examined as applied to the facts of the case; it is insufficient to show that the statute

---

[1] The Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV, § 1 (applicable to the Virgin Islands by virtue of Section 3 of the Revised Organic Act of 1954, 48 U.S.C. §§ 1541-1645 (1995 & Supp. 2003), *reprinted in* V.I. CODE ANN., Historical Documents (preceding title 1 of the V.I. Code).

may be generally vague in relation to others. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494-495, 71 L. Ed. 2d 362, 102 S. Ct. 1186(1982); *see also Rode v. Dellarciprete*, 845 F.2d 1195, 1199-1200 (3d Cir. 1988). Therefore, a statute is not unconstitutionally vague where the defendant's conduct is clearly proscribed by its terms. See *Rode*, 845 F.2d at 1199 (noting defendant has no standing to challenge vagueness where he clearly falls within the statute) (citations omitted); *Virgin Islands v. Steven*, 962 F. Supp. 682, 36 V.I. 176 (App. Div. 1997); *see also Parker v. Levy*, 417 U.S. 733, 755-56, 41 L. Ed. 2d 439, 94 S. Ct. 2547 (1974) (one to whose conduct a statute clearly applies may not successfully challenge it for vagueness). Moreover, we have previously held that, "Where the general class of offenses can be made constitutionally definite by reasonable construction of the statute, the reviewing court has a duty to give the statute that construction." *Steven*, 962 F. Supp. at 684-85.

The constitutional infirmity Soto alleges in this instance is the inexactness of the statutory terms, "to arouse" or "to gratify," which are used to define the prohibited conduct. He contends those terms are so vague as to leave the determination of criminality to the police officer's sole judgment in each instance. We begin with the fundamental premise that undefined terms in a statute are to be given their ordinary meanings, based on common understanding. *See Virgin Islands v. Knight*, 989 F.2d 619, 633, 28 V.I. 249 (3d Cir. 1993) (noting that the intent of a statute is presumed to have been expressed through the ordinary meaning of the words and is to be given effect if unambiguous) (citing *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 557-58, 109 L. Ed. 2d 588, 110 S. Ct. 2126 (1990); *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 64 L. Ed. 2d 766, 100 S. Ct. 2051 (1980)); *see also Coates v. Cincinnati*, 402 U.S. 611, 29 L. Ed. 2d 214, 91 S. Ct. 1686 (1970); *compare, Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1374 (3d Cir. 1996) (noting that, "Any word or phrase, not otherwise defined, must be construed according to the rules of grammar and according to the common and approved usage"). We are unpersuaded by Soto's argument that the statutory terms in this instance fail to clearly define the prohibited conduct, are entirely subjective and require a presumption that touching leads to arousal or gratification.

First, the statute specifies that the crime is committed when the intended purpose is to arouse or gratify "the sexual desires" of any

person. *See* 14 V.I.C. § 1699. To "arouse" or "gratify" are not terms of art but, rather, are words of common and ordinary meanings. *See e.g.,* WEBSTER'S NEW COLLEGE DICTIONARY 62, 486 (2001) ("to arouse" means, "to stir up; excite or provoke"; to gratify means "to please or satisfy"). That the statute prohibits only touching done with an evil purpose is clear, and the statutory terms impart such an evil purpose by specifying that such touching be aimed at arousing or gratifying a person's "sexual desires."

■ Here, Soto was observed over a five-year old girl, with his hand on her vagina as she slept. The child's dress was up, exposing her under-wear. There was no evidence presented at trial that Soto had a caretaking responsibility for the child or had some non-criminal purpose for placing his hand on the child's vagina. Soto's conduct fell squarely within that prohibited by the statute, and a reasonable person would have known that such conduct would expose him to criminal liability. *See United States v. Loy*, 237 F.3d 251, 259 (3d Cir. 2001) (noting that sufficiency of the notice of a statute is to be examined "in light of the conduct with which a defendant is charged," and a defendant whose conduct "is at the core" of the activities clearly covered by the statute's terms may only raise a vagueness defense if the statute is one that is likely to chill the exercise of constitutionally protected conduct); *see also, Maynard v. Cartwright*, 486 U.S. 356, 361, 100 L. Ed. 2d 372, 108 S. Ct. 1853 (1988) (no lack of notice may be asserted to defeat a statute if reasonable persons would know their conduct puts them at risk of punishment under the statute). Soto's vagueness challenge on these grounds must, therefore, fail.

■ Equally unpersuasive is Soto's argument that the statute is vague in its failure to provide for a wide range of situations in which sexual contact with a minor might reasonably be construed as innocent or justified, such as diapering an infant or other touching, or displays of affection by caretakers, educators or parents. By its limiting terms, the statute criminalizes only touching done for the intended purpose of sexual arousal or sexual gratification. Therefore, by its terms, the statute necessarily excludes non-sexual touching by parents, educators, caretakers and the like. Nonetheless, there is no assertion on this record that Soto fell within any of those groups or had a legal purpose for touching the minor's vagina. Therefore, he has no standing to complain the statute is vague as applied to other groups. *See Virgin Islands v. Steven*, 962 F. Supp. 682, 36 V.I. 176; *see also, Rode*, 845 F.2d at 1199.

■ This Court also rejects as baseless Soto's additional arguments that the statutory terms also fail to specify to whom the purpose of arousal or gratification is intended or requires a presumption that touching *leads* to arousal. The statute unambiguously specifies that touching intended to arouse or gratify **any** person is prohibited. There is no requirement in the statute that the touching *actually* arouses or gratifies one's sexual desires; it need be shown only that the touching was intended to accomplish that result.

## C. Jury Voir Dire

Soto additionally asserts the trial court improperly precluded a *voir dire* examination to determine whether members of jury panel were associated with, or sympathetic to, the Women's Coalition of St. Croix, a victim's advocacy group. Soto argues such questioning was imperative to safeguard his right to a fair and impartial trial because the crime involved a sexual assault of a child and the victim and perpetrator were of different races, both of which present inherent biases which *voir dire* would have divulged.

■ The scope and content of *voir dire* examination is within the broad discretion of the trial judge, and its determinations in that regard will not be disturbed absent an abuse of that discretion. *See United States v. Segal*, 534 F.2d 578, 581 (3d Cir. 1976). An abuse of discretion will be found where the court's *voir dire* examination is "so general that it does not adequately probe the possibility of prejudice" or where it completely bars all inquiry into a relevant subject matter designed to root out prejudice. *Waldorf v. Shuta*, 3 F.3d 705, 710-12 (3d Cir. 1993) (noting that examination must be probative on the issue of impartiality) (citations omitted); *see also Segal*, 534 F.2d at 581. Federal Rule of Criminal Procedure 24(a) permits the parties to participate in the process of selecting a jury:

> The court may examine prospective jurors or may permit the attorneys for the parties to do so.
>
> If the court examines the jurors, it must permit the attorneys for the parties to:
>
> (A) ask further questions that the court considers proper; or
> (B) submit further questions that the court may ask if it considers them proper.

FED. R. CRIM. P. 24 (applicable through TERR. CT. R. 7). However, although the court should invite participation by the parties, the court is not required to utilize every proposed question; rather, fairness is satisfied where the court's *voir dire* examination as a whole was reasonably designed to elicit any prejudice of the jurors. *See e.g., Segal,* 534 F.2d at 581; *see also United States v. Salamone,* 800 F.2d 1216, 1225-26(3d Cir. 1986); *Butler v. Camden,* 352 F.3d 811, 816 (3d Cir. 2003) (noting that it is the rare case where failure to ask a single proposed *voir dire* question will result in reversal).

█ In view of the foregoing, assessing the impact of the court's failure to ask a proposed question or determining whether the examination was sufficient to elicit any prejudices necessarily rests on a review of the *voir dire* examination in totality. In this instance, Soto has submitted only his proposed *voir dire* questions for review here. However, he has submitted nothing on the record to permit a determination of the adequacy of the court's *voir dire* examination as a whole.[2] Without the opportunity to review the *voir dire* examination in its entirety, and because of the fact-specific nature of the inquiry, we can find no basis for concluding that the court abused its discretion in failing to permit the proposed question on *voir dire*.[3]

## D. Admission of Testimony

Soto's final argument is that the trial court, over his hearsay objections, improperly admitted the testimony of Georgene Schuster and Allyson Dedinsky regarding statements made by the only witness to the crime. We review the trial court's admission of testimony or other evidence under the Federal Rules of Evidence for abuse of discretion; however, to the extent the determination is based on the court's interpretation of those rules, our review is plenary. *See Williams v. Virgin Islands,* 271 F. Supp. 2d 696, 702 (D.V.I. App. Div. 2003) (*citing Virgin*

---

[2] The concluding portion of the *voir dire* examination, consisting of just one additional question added upon request after *voir dire* had ended, and the sidebar discussions of the challenged question regarding the Women's Coalition, are also included in the record.

[3] Moreover, there is nothing on the record to suggest a climate of racial bias prevailed at the trial or that examining the jury regarding its association to a women's advocacy group would have weeded out those harboring racial bias. Soto's only allegation regarding potential racial bias is that the victim was white and the defendant Hispanic.

*Islands v. Texido*, 89 F. Supp. 2d 680, 683, 42 V.I. 217 (App. Div. 2000); *United States v. Velasquez*, 64 F.3d 844, 33 V.I. 265 (3d Cir. 1995)).

## 1. Statement of Georgene Schuster

Immediately after witnessing the incident, Lestrade sought out Schuster, a teacher at the school who occupied an adjoining classrooom. Lestrade testitifed that after coming upon Soto with his hand over the girl's vagina, she left in shock and ran to Schuster's classroom. [Supplemental App. at 104].

> I was shock and then he left and I ran to Mrs. Schuster's classroom. I was trembling then I held on to Mrs. Schuster. She said what happened to Marie? I say Mrs. Schuster, oh God! Ms Schuster she ask me what happened? I see the man touching the child vagina and she said what? And Mrs. Schuster and I went back to the room where the little girl was laying down ... . (sic).

[*Id.*]. Soto argued below that Schuster's later testimony recounting what Lestrade told her under these circumstances constituted inadmissible hearsay which was not saved by any of the hearsay exceptions. However, the trial court admitted the testimony under the excited utterance exception to the hearsay rule.

 Because of concerns about reliability and the constitutional right of an accused to test the statements of witnesses on cross examination, the federal rules disfavor admission of out-of-court statements. *See* FED. R. EVID. 801, 802; *see also, Idaho v. Wright*, 497 U.S. 805, 817, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990) (discussing constitutional basis underlying hearsay rules). However, the federal rules recognize several exceptions to this general proscription which, because of the circumstances surrounding their making, suggest their inherent reliability and do no violence to the policies underlying the hearsay rules. *See generally,* FED. R. EVID. 803; *Wright*, 497 U.S. at 817. Among these is the "excited utterance" exception, which permits admission of a statement "related to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition." FED. R. EVID. 803(2). The basis for the exception is that a sudden statement made during the startling event and without the opportunity for reflection is likely to be reliable. *See Wright*, 497 U.S. at 817; *see also Kornicki v. Calmar Steamship Corp.*, 460 F.2d 1134, 1138

(3d Cir. 1972) (Whether a statement falls within the excited utterance exception to the hearsay rule lies within the discretion of the trial judge.). A statement comes within this exception if it is shown: (1) there was a startling occasion, (2) the statement was made before the declarant had time to fabricate, and (3) the statement relates to the circumstances of the occurrence. *See Berkeley v. Pueblo Supermarket*, 740 F.2d 230, 235(3d Cir. 1984) (citing 6 WIGMORE ON EVIDENCE § 1750 (Chadbourn rev. 1976); *Milwaukee Gear Co. v. Charles Benjamin, Inc.*, 466 F.2d 588, 591 (3d Cir. 1972)); *see also Kornicki*, 460 F.2d at 1138-39 (noting that *"the circumstances of the particular incident* in and of themselves can give rise to a 'reasonable presumption of spontaneity' of the utterance"). Factors which may be considered in this determination are: the lapse of time between the startling event and the statements; whether the statements were made in response to an inquiry; the age of the declarant; the characteristics of the event; his physical and mental condition; and the subject matter of the statements. *See e.g., United States v. Moses*, 15 F.3d 774, 777-78 (8th Cir. 1994); *see also States v. Moss*, 544 F.2d 954, 958 (8th Cir. 1976) (showing of continuous unrelieved excitement after event provides evidence that statement was excited utterance, even if not made during the event or immediately thereafter).

 Lestrade's statement to Schuster satisfied the standard for admission under Rule 803(2). Schuster testified as follows regarding her initial encounter with Lestrade immediately after she witnessed the crime:

Q. Can you tell us how you encountered Marie Lestrade at that time?

A. How I encountered her or she encountered me?

Q. Describe your encounter?

A. I was in my classroom standing approximately in the middle of the room and Ms. Marie came from the classroom right next to mine and I probably saw her maybe halfway through the room and she was like frantic and the next thing I knew she was practically on top of me and she grab me so tightly and such a panic that I had to reach out to hold myself up.

Q. Did she say anything to you at that time?

A. Yes, she did.

Q. What did she say?

A. I had to ask her repeat it three times.

Q. Before you ask her to repeat.

A. She said something and I could not understand what was it because she was almost in tears.

Q. Were you able to figure out what she was telling you? ...

A. I finally figure out the man, the man he touched the child.

Q. Okay. Did she give you any other information?

A. I asked her what man? And then description of herself and I can't exactly remember what she said. Something to the effect the man who cleans, picks up the trash, he touched the child on her vagina.

Q. What did you and Ms. Lestrade do after that?

A. I followed her into Ms. Dedinsky's classroom.

Q. Did she point anything out to you at that time?

A. Yes, she did.

Q. What did she show you?

A. She showed me the child.

[App. at 126-27]. The statements were made within moments of the incident. The undisputed testimony at trial regarding the condition of the declarant was that she was hysterical, close to tears, and unable to clearly express herself verbally. Moreover, it was clearly a shocking experience to witness an employee with his hand on the vagina of the 5-year-old sleeping girl in the school setting. The statement Schuster was permitted to testify to related to circumstances of the startling event. Finally, Lestrade's statements to Schuster were made spontaneously. The record does not reflect an interrogation by Schuster, as appellant argues. Rather, the testimony clearly established that the declarant approached Schuster and offered the statements. Indeed, Schuster noted she was forced to ask Lestrade to repeat what she was saying several times because she was unable to discern what the witness was saying, given the witness' hysterical condition. She also noted that, after finally discerning that Lestrade was saying that "the man" had touched the child, she asked Lestrade to point out which man. Given the context of Schuster's

exchange with the witness, the circumstances of the event and the condition of the witness, the standards for admission as an excited utterance were met.

## 2. Statements of Allyson Dedinsky

 The record does not support the appellant's argument that the government was permitted to adduce hearsay testimony from Allyson Dedinsky, the minor girl's teacher. Dedinsky testified that she had left the classroom briefly. As she was returning to the classroom, she saw the appellant coming from her classroom door and, after some brief comments to her regarding a stuffed animal, he continued on. As she entered her classroom, Dedinsky saw Lestrade talking to Schuster. She testified that Lestrade appeared hysterical, distraught, and upset. [Supplemental App. at 134-40]. This was the sum total of the government's examination of Dedinsky. The examination did not delve into what Dedinsky may have learned through Lestrade or Schuster regarding the crime. Indeed, the trial court ruled that any such testimony was inadmissible and granted defendant's *in limine* motion to suppress any testimony by Dedinsky regarding statements made by Lestrade. [App. at 63-79]. The court's ruling permitted Dedinsky to testify only to her personal observations of Lestrade's condition upon returning to the classroom. [*Id.*]. Accordingly, Soto's challenges on this point are without merit.

### III. CONCLUSION

The statute under which Soto was convicted was clear on its terms. Though undefined in the statute, the terms used to criminalize the prohibited touching are unambiguous and clearly understood according to their ordinary meanings, and further sufficiently put reasonable persons on notice of the conduct that would subject them to criminal liability. Moreover, Soto's conduct falls clearly within that prohibited under the statute, and he has no standing to complain that the statute is otherwise vague as applied to others. We also find no basis on this record for determining the court abused its discretion in declining to include a question proposed by the appellant in its *voir dire* examination of the jury. Soto's final challenge to his conviction must also fail, as we determine the court did not abuse its discretion in admitting the testimony of Georgene Schuster under the excited utterance exception to

the hearsay rules. Moreover, there exists no merited basis for upholding Soto's challenge surrounding the testimony of Allyson Dedinsky. In view of the foregoing, the appellant's conviction will be affirmed.