**GOVERNMENT OF THE VIRGIN ISLANDS, Appellee**
**v.**
**LESLEY ALMIR RICHARDSON, Appellant**

D.C. Criminal App. No. 2002-172

District Court of the Virgin Islands

Division of St. Thomas and St. John

January 13, 2009

MATTHEW C. PHELAN, AAG, St. Thomas, USVI, *For the Appellee.*

ANNA H. PAIEWONSKY, ESQ., St. Thomas, USVI, *For the Appellant.*

GÓMEZ, *Chief Judge of the District Court of the Virgin Islands*; FINCH, *Judge of the District Court of the Virgin Islands*; and BRADY, *Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.*

## MEMORANDUM OPINION

(January 13, 2009)

On October 23, 2002, the Superior Court entered a judgment against defendant Lesley Almir Richardson ("Richardson") convicting him of unlawful possession of a firearm and resisting arrest. Richardson timely filed this appeal from the judgment making the following arguments:

1. The prosecutor engaged in misconduct and violated appellant's due process rights in repeatedly questioning appellant regarding his post-arrest post *Miranda* silence;

2. The trial court denied the appellant his Sixth Amendment right to a speedy trial and the trial court erred in denying appellant's motion for dismissal for a speedy trial violation;

3. The trial court erroneously permitted the Government to deny appellant's constitutional right to confrontation in failing to

produce the custodian of records regarding firearm licensure for St. Croix.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On March 21, 1999, Richardson was arrested for possession of an unlicensed firearm. On April 7, 1999, the Government of the Virgin Islands (the "Government") charged Richardson in a two-count information with possession of an unlicensed firearm in violation of title 14, section 2253(a) of the Virgin Islands Code, and unlawfully resisting arrest in violation of title 14, section 1508 of the Virgin Islands Code. These actions allegedly occurred on March 21, 1999.

A pretrial conference took place on September 14, 1999, at which Richardson was represented by Rhys S. Hodge. Judge Ishmael Meyers recused on September 27, 1999. The matter was reassigned to Judge Soraya Diase, who subsequently left the bench. In June, 2000, the matter was assigned to Judge Audrey Thomas-Francis, but Judge Thomas-Francis was later assigned to the Family Division. In August, 2001, Judge Ive Swan was assigned to the case and a pretrial conference was held soon thereafter.

On September 17, 2001, attorney Jacqueline A. Drew entered a notice of appearance as Richardson's new counsel because Richardson's first attorney, Rhys Hodge, had been appointed to the Superior Court bench. On September 28, 2001, Richardson filed a motion to dismiss on speedy trial grounds. A renewed motion to dismiss was filed on February 7, 2002. On March 4, 2002, Judge Swan entered an order denying the motion to dismiss. On March 15, 2002, a pretrial conference was held at which both parties indicated they were ready for trial. The trial was set for April 2, 2002. After the March 15, 2002, conference, Judge Swan recused and the matter was continued and assigned to another judge.

On April 24, 2002, Richardson filed a second motion to dismiss for a speedy trial violation. On June 11, 2002, Judge Rhys S. Hodge recused himself from the case. Judge Brenda Hollar was assigned the case. Judge Hollar denied the motion to dismiss on June 24, 2002. A jury was selected on August 30, 2002, and the trial began before Judge Hollar on September 12, 2002.

At the trial, arresting officer Jocelyn Lee-Bob testified that Richardson had pulled a gun on two people and that Richardson had run when police

approached. He fell and dropped a gun and was apprehended by police. The recovered gun had an obliterated serial number. No fingerprint testing was performed on the gun by the police. According to Officer Boyce, law enforcement officers read Richardson his *Miranda* rights after he was transported to the police station.

The Government also called as a witness Sergeant Athenia Brown ("Brown"), supervisor of the firearms unit for St. Thomas and St. John. Brown testified that her records indicated Richardson did not have a license for the weapon the Government alleged he possessed. Brown also testified that the firearm records for St. Croix indicated Richardson did not have a license. When the Government sought to admit the firearm record from St. Croix, defense counsel initially raised an objection but then indicated that she did not object:

| | |
|---|---|
| The Court: | Any objection. |
| Attorney Drew: | Yes, Your Honor. I object to the Government's Exhibit number 11. I don't believe that a proper foundation has been laid. Specifically, this is not a document that was prepared or signed by Ms. Jarvis, nor is there any testimony specifically as to Officer Brown's personal knowledge whether or not — |
| The Court: | Is it self-authenticated? |
| Attorney Drew: | Your Honor, I have to say the copy that I have and the copy that I've seen is not the copy that she is testifying from. |
| The Court: | Is the one that's being identified self-authenticated pursuant to the rule? |
| Attorney Johnson: | The Government would say yes, Your Honor. If we could have side bar to discuss this. |
| The Court: | I'm just asking. She is saying she received it. I'm trying to find out whether it is self-authenticated according to the rule. You may look at it. Let Attorney Drew see the seal and everything to see whether she will agree that it is self-authenticated. |
| Attorney Drew: | Your Honor, I have no objection. |
| The Court: | All right. It is in. |

[J.A. 178-79.]

Richardson testified that he did not have a weapon. He explained that someone he knew as Mr. Meyers had the gun instead. Richardson stated that he knew Meyers from high school and he believed they resembled one another. Richardson stated that everyone ran when the police approached, but that because he fell, he was caught and arrested by the police.

During the re-cross-examination of Richardson, Richardson testified that he was not read his *Miranda* rights. The Government then asked Richardson about whether he had made any statements to anyone about his claims:

> Attorney Johnson: Did you make a statement [to the police]?
> Lesley Richardson: No.
> . . .
> Attorney Johnson: Did you make a statement to your lawyer?
> Lesley Richardson: Yes.
> . . .
> Attorney Johnson: Did you make a statement to anyone other than your attorney? . . .
> Lesley Richardson: Yes.
> . . .
> Attorney Johnson: Did you make a written statement to anyone else other than your friends and your attorney?
> Lesley Richardson: No.
> Attorney Johnson: Did you make a written statement to the Attorney General of the United States?
> Lesley Richardson: No.
> Attorney Johnson: Did you make a written statement to the Department of Justice of the Virgin Islands?
> Lesley Richardson: No.
> Attorney Johnson: Did you make a written statement to anyone in law enforcement?
> Lesley Richardson: No.
> . . .
> Attorney Johnson: In the three plus years since you were arrested you never made a statement to anyone in law enforcement?
> Lesley Richardson: No.

 

[J.A. 291-94.]

Richardson was convicted by the jury. Richardson appeals his conviction, arguing that his due process rights, right to a speedy trial and right to confrontation were all violated. Richardson argues that the matter should be dismissed with prejudice or, in the alternative, that his conviction should be vacated and the matter remanded to the Superior Court.

## II. JURISDICTION AND STANDARD OF REVIEW

The Revised Organic Act gives this Court "appellate jurisdiction over the courts of the Virgin Islands established by local law to the extent now or hereafter prescribed by local law." 48 U.S.C. § 1613a; *see also* V.I. CODE ANN. 4, §§ 33-40 (2002); Revised Organic Act of 1954 § 23A. This Court has jurisdiction to consider final orders or judgments entered by the Superior Court in all criminal cases in which the defendant has been convicted, other than a plea of guilty. *See* V.I. CODE ANN. 4, §§ 33-40 (2002); *see also* Revised Organic Act of 1954 § 23A, 48 U.S.C. § 1613a.

The trial court's application of the law is reviewed *de novo. See Soto v. Gov't of the V.I.*, 46 V.I. 363, 344 F. Supp. 2d 450, 453 (D.V.I. App. Div. 2004). However, "[a]ny non-contemporaneous objections are subject to plain error review." *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2003).

> Under the plain error standard, before an appellate court can correct an error not raised at trial, it must find: (1) an error; (2) that is plain; and (3) that affected substantial rights. If all three conditions are met, an appellate court may in its discretion grant relief, but only if the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings.

*United States v. Dobson*, 419 F.3d 231, 236 (3d Cir. 2005) (internal quotations omitted).

"Whether appellant's Sixth Amendment constitutional right to a speedy trial was violated is a question of law over which we exercise plenary review." *Rivera v. Virgin Islands*, 37 V.I. 68, 981 F. Supp. 893, 897 (D.V.I. 1997).

## III. DISCUSSION

### A. Due Process Rights

 Richardson argues that the prosecutor engaged in misconduct and violated Richardson's due process rights by repeatedly questioning him regarding his post-arrest, post-*Miranda* silence.[1] Because Richardson's trial counsel did not object to the questioning contemporaneously, this issue is subject to plain error review. *Dobson*, 419 F.3d at 236.

 In *Doyle v. Ohio*, the Supreme Court held that "the use for impeachment purposes of [a defendant's] silence, at the time of arrest and after receiving *Miranda* warnings, violate[s] the Due Process Clause of the Fourteenth Amendment." 426 U.S. 610, 619, 96 S. Ct. 2240, 49 L. Ed. 2d 91 (1976). As the Fifth Circuit has explained,

> [w]here prosecutorial comments are designed to draw meaning from silence, they remain subject to the rule in *Doyle*. In other words, prosecutorial statements that are either intended to or have the necessary effect of raising a negative inference simply because of the defendant's exercise of his right to remain silent are prohibited.

*Pitts v. Anderson*, 122 F.3d 275, 280 (5th Cir. 1997) (citing *Anderson v. Charles*, 447 U.S. 404, 409, 100 S. Ct. 2180, 65 L. Ed. 2d 222 (1980)).

 *Doyle* applies only when an arrestee is read his *Miranda* rights and advised of his right to stay silent. *See Fletcher v. Weir*, 455 U.S. 603, 607, 102 S. Ct. 1309, 71 L. Ed. 2d 490 (1982) ("In the absence of the sort of affirmative assurances embodied in the *Miranda* warnings, we do not believe that it violates due process of law for a State to permit cross-examination as to postarrest silence when a defendant chooses to take the stand."). "[W]hen a testifying defendant makes an objection to the prosecutor's cross-examination with respect to post-arrest silence, it is

---

[1] Richardson also argues in his brief that the Government's questioning of why he did not call potentially helpful witnesses to testify on his behalf violated his due process rights. However, courts have not held this type of question to be construed as a comment on the failure of the defendant to testify. *See, e.g., United States v. Keller*, 512 F.2d 182, 186 (3d Cir. 1975) ("Finally, we see no error in the prosecutor's comment on the absence of a Mr. Polin, a witness who might have corroborated the testimony of appellant's daughter. It is perfectly proper to comment on the failure of the defense to call a potentially helpful witness, at least where, as here, the comment could not be construed as a comment on the failure of the defendant to testify.").

the prosecutor's burden . . . to establish that *Miranda* warnings were not given prior to the silence relied upon for impeachment purposes." *United States v. Cummiskey*, 728 F.2d 200, 206 (3d Cir. 1984).

█ While it is disputed whether Richardson was in fact read his *Miranda* rights, Richardson himself testified he was not read his *Miranda* rights.[2] Thus, under his own view of the facts, there could be no *Doyle* violation. For this Court to find that Richardson's due process rights were violated by the prosecutor's questions, this Court would not only have to find a plain error, but also an error that "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Dobson*, 419 F.3d at 236. This Court does not find any apparent or plain error since under the facts Richardson proposed at trial, there could be no *Doyle* violation.[3]

## B. Right to a Speedy Trial

Richardson argues that the trial court denied him his Sixth Amendment right to a speedy trial and erred in denying his motions to dismiss for lack of a speedy trial. This issue is given plenary review.

█ Richardson is correct that the Sixth Amendment guarantees a right to a speedy trial.[4] *Barker v. Wingo*, 407 U.S. 514, 515, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972); *see also Gov't of the V.I. v. Pemberton*, 813 F.2d 626 (3d Cir. 1987). In weighing any speedy trial claim, the following four factors are considered: (1) length of delay; (2) reason for delay; (3) defendant's assertion of his right; and (4) prejudice to the defendant. *Barker*, 407 U.S. at 530-31; *United States v. Dreyer*, 533 F.2d 112, 114-15 (3d Cir. 1976). In this balancing test, no one factor is "a necessary or

---

[2] In addition to his answer of "no" when asked, "They did not read you your rights?", Richardson stated on direct examination that "I ask all three [of the officers] if you all don't read any rights in here any more. Mr. Boyce turn to me and tell me I have no rights in here I'm in his town." [J.A. 261.]

[3] Richardson's brief also briefly mentions a claim of ineffective assistance of counsel for trial counsel's failure to object to the prosecutor's questioning regarding Richardson's silence. Yet, this issue is not included in the list of statement of issues on appeal, as required by the local rules. Nonetheless, the Court finds that this line of questioning was not improper because *Doyle* did not apply.

[4] The Sixth Amendment right to a speedy trial applies in the Virgin Islands per section 3 of the Revised Organic Act, 48 U.S.C. § 1561. *See, e.g., Gov't of the V.I. v. King*, 25 V.I. 114, 117 (Terr. Ct. 1990).

sufficient condition to the finding of a deprivation of the right of speedy trial." *Barker*, 407 U.S. at 533.

### 1. Length of Delay

■ When the length of delay has been presumptively prejudicial, the Court should make an inquiry into the other factors. As the post-accusation delay before trial nears one year, lower courts find it presumptively prejudicial. *Doggett v. United States*, 505 U.S. 647, 652 n.1, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992). The delay in bringing Richardson to trial was substantial as it was approximately three and one half years after he was arrested before the trial began. *Cf. Dreyer*, 533 F.2d at 117 (finding a violation of the speedy trial guarantee where twenty-nine months elapsed between the indictment and the trial).

### 2. Reason for Delay

■■ The reason for the delay is the second factor. In evaluating this factor, the Court must consider whether the government discharged "its constitutional duty to make a diligent, good-faith effort to bring him [to trial]." *Moore v. Arizona*, 414 U.S. 25, 26, 94 S. Ct. 188, 38 L. Ed. 2d 183 (1973) (citing *Smith v. Hooey*, 393 U.S. 374, 383, 89 S. Ct. 575, 21 L. Ed. 2d 607 (1969)). Clearly, different reasons for delay will be weighed differently:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

*Barker*, 407 U.S. at 531.

■ The reasons for delay in Richardson's trial are substantially based on the recusal of a number of judges and the reassignment of the case. At least five different judges were assigned to this matter before it went to trial. The responsibility for the delay rests largely with the Superior Court. While this in turn weighs against the Government, it is weighed less heavily than deliberate delay, of which there is no evidence.

### 3. Defendant's Assertion of his Right

 Whether the defendant has asserted his right to a speedy trial is the third and most important factor. *Barker*, 407 U.S. 534-35. Richardson first filed a motion asserting his right to a speedy trial in September 2001, within two weeks of his trial counsel being appointed. This clearly favors Richardson.

### 4. Prejudice to the Defendant

 The final factor is prejudice to the defendant. The Supreme Court has recognized that prejudice to the defendant is not limited to an impairment to the defense. *Moore v. Arizona*, 414 U.S. at 26-27; *Barker*, 407 U.S. at 532-33 (noting incarceration can cause unemployment, idleness, and disruption to family life in addition to restraints on liberty while living under a "cloud of anxiety, suspicion and often hostility"); *see also Dreyer*, 533 F.2d at 115. The Third Circuit has determined that prejudice can also include any threat to a defendant's "psychological, physical, and financial [interests] in the prompt termination of a proceeding which may ultimately deprive him of life, liberty, or property." *Dreyer*, 533 F.2d at 115 (holding that severe anxiety and depression that contributed to a suicide attempt by the defendant was clearly enough prejudice to the defendant to warrant vacating a sentence and dismissing the indictment). There can also be prejudice to the defendant "if defense witnesses are unable to recall accurately events of the distant past." *Barker*, 407 U.S. at 532.

 Richardson argues that he suffered "severe anxiety of awaiting possible conviction and incarceration for almost four years . . . ." [Appellant's Br. at 29.] Richardson gives no evidence or details of unusual anxiety to show prejudice. Richardson was only in jail for four days during the three and a half years he awaited trial.

 Richardson also argues that his defense was prejudiced by delay due to the inevitable loss of memory of witnesses. The retrieved weapon was not fingerprinted, thus the evidence linking Richardson to the weapon was based on eyewitness accounts. However, Richardson did not seem to have difficulty recalling the events of March 21, 1999. The Government's witnesses also seemed to recall the events without any problems. As the Supreme Court has held, "[t]here is . . . no need to press the Sixth Amendment into service to guard against the mere possibility that

pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function." *United States v. Marion*, 404 U.S. 307, 323, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971). The jury was in the best position to determine whether the memories of the witnesses were credible.

In balancing the *Barker* factors, there is no prejudice in the delay that would give rise to a violation of Richardson's Sixth Amendment right to a speedy trial.

## C. Right to Confrontation

 Richardson's final argument on appeal is that his right to confrontation was denied when the Government failed to produce the custodian of records regarding firearm licensure for St. Croix. While Richardson argues this issue is subject to plenary review, the Court disagrees. It would be subject to plenary review only if trial counsel had made a contemporaneous objection. However, as the transcript indicates, trial counsel initially objected but was then apparently satisfied that the document was self-authenticating. [J.A. 179 ("Attorney Drew: Your Honor, I have no objection.").] Thus, this Court will review this issue using the plain error standard.

Brown testified that her records indicated Richardson did not have a license for a firearm on St. Thomas or St. John. She prepared a certificate of absence of record regarding Richardson, as of March 22, 1999. Similarly, a Ms. Jarvis prepared a certificate of absence of record regarding Richardson within the division of St. Croix. Brown testified as to the contents of the St. Croix certificate as well.

 Richardson argues that the St. Croix certificate prepared by Jarvis constituted a testimonial declaration that is subject to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). The *Crawford* Court held that testimonial statements are inadmissible unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 59. The Government did not demonstrate that Jarvis was unavailable, and Richardson had no prior opportunity to cross-examine her. However, the certificate is not of a testimonial nature.

 At least three federal appellate courts have held that such certificates of non-existence of records are not testimonial under *Crawford. See United States v. Urqhart*, 469 F.3d 745, 749 (10th Cir.

2006); *United States v. Salazar-Gonzalez*, 458 F.3d 851, 854 (9th Cir. 2006); *United States v. Rueda-Rivera*, 396 F.3d 678, 680 (5th Cir. 2005). The *Crawford* Court explicitly stated that business records were non-testimonial. 541 U.S. at 56. Courts have likened certificates of non-existence of records to business records, explaining that while typically created for the purposes of litigation, their "sole function [is] to show the result of a query of a class of records kept in the ordinary course of the [business's] activities . . . ." *United States v. Bryant*, Crim. No. 04-47, 2006 U.S. Dist. LEXIS 39619, at *9 (W.D. Va. June 15, 2006).

## IV. CONCLUSION

The Court finds that there was no *Doyle* violation. The Court also finds no error in the trial court's denial of the motions to dismiss for alleged speedy trial violations. Finally, the Court finds no error in admitting the testimony and certificate of non-existence of record regarding Richardson's lack of a license for the gun. Accordingly, the Court will affirm Richardson's conviction. An appropriate judgment follows.